Robert **HARRIS**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 19169.

United States Court of Appeals Ninth Circuit.

Nov. 5, 1964.

Robert Harris, in pro. per.

Sidney I. Lezak, Acting U. S. Atty., Roger G. Rose, Asst. U. S. Atty., Portland, Or., for appellee.

Before CHAMBERS, JERTBERG and DUNIWAY, Circuit Judges.

JERTBERG, Circuit Judge:

Appellant is a federal prisoner, presently incarcerated at the Federal Penitentiary located at Steilacoom, Washington. He appeals from an order of the District Court entered on October 3, 1963, denying his amended motion made under 28 U.S.C. § 2255 to vacate and set aside the judgment of conviction and sentence imposed upon him on October 19, 1962.

The record discloses that on August 29, 1962, he pleaded guilty to counts 2 and 5 of a six count indictment, all counts charging violations of Title 18, § 152.

Count 2 charged appellant with concealing $3100.00 in cash and miscellaneous tools and office equipment valued in excess of $500.00 from his bankruptcy estate, and Count 5 charged appellant with giving false testimony before the bankruptcy court respecting several material matters affecting the affairs and assets of his bankrupt estate.[1]

Appellant specifies that the District Court erred:

(1) in not vacating the judgment and sentence theretofore imposed in response to appellant's motion requesting the Judge of the District Court who sentenced him to disqualify himself in the post conviction proceeding;

(2) in denying appellant's motion without a hearing to determine:

(a) competence of counsel and alleged violation of appellant's rights in the bankruptcy proceedings;

(b) whether appellant's pleas of guilty were entered without an understanding of the Fifth Amendment; and

(c) whether the United States Attorney and appellant's court appointed counsel entered into an unlawful arrangement to induce or force appellant to plead guilty.

In order to place the questions presented in proper context, it is necessary to review certain matters in appellant's

1. Title 18 U.S.C. § 152, in relevant part provides:

"Whoever knowingly and fraudulently conceals from the receiver, custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or from creditors in any bankruptcy proceeding, any property belonging to the estate of a bankrupt; or

"Whoever knowingly and fraudulently makes a false oath or account in or in relation to any bankruptcy proceeding;

* * * * *

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both."

bankruptcy proceedings and certain matters which occurred during the course of appellant's arraignment and sentencing in the District Court.

On December 1, 1960, certain creditors of appellant filed a petition in the United States District Court for the District of Oregon praying that appellant be adjudged a bankrupt within the purview of the Bankruptcy Act, and that service of the petition with a subpoena be made upon appellant. On December 6, copy of the petition and the subpoena was served upon appellant notifying him of the filing of the petition and directing him to plead to said petition on or before the 22nd day of December, 1960, and stating that if he failed to do so he may be adjudged a bankrupt by default. On December 27, 1960, having failed to appear and plead to said petition, appellant was adjudicated a bankrupt and proceedings were referred to the Referee in Bankruptcy of the court to take further proceedings as required by law, and directing the bankrupt shall attend before said Referee and submit to such orders as may be made by him relating to said bankruptcy. On the same day, appellant was directed by the referee in bankruptcy to prepare, make oath to and file in the bankruptcy court, a schedule of his property and a list of all his creditors. On January 5, 1961, appellant, represented by counsel, filed in the bankruptcy court a statement of affairs and schedules. Appellant was directed by the referee to attend the first meeting of creditors at which appellant and his counsel appeared and testified concerning his affairs. He also, with counsel, appeared and testified at adjourned meetings of creditors.

On January 20, 1961, one Bernard E. Cantor was duly appointed and qualified as trustee of appellant's bankrupt estate. In the course of the bankruptcy proceedings, appellant made and filed a sworn statement of affairs in which he made a number of representations concerning the possession and transfer of certain of his assets. Other statements were made by appellant, under oath, when

testifying about various aspects of his present and past financial condition, but he denied both in his schedules and his testimony the existence of the assets he was charged with concealing.

On March 29, 1962, the above mentioned indictment was returned against the appellant. Following appellant's arrest and on his initial appearance in court, the Honorable Gus J. Solomon, Chief Judge of the United States District Court for the District of Oregon, was presiding. He called attention to the fact that his brother-in-law was the trustee of appellant's bankrupt estate, and inquired of appellant if he was satisfied to have him (Judge Solomon) hear the case. Appellant replied that since the trustee had had nothing to do with appellant's activities in the bankruptcy proceedings, that he was satisfied to have Judge Solomon hear the case. Thereupon Judge Solomon appointed counsel to represent appellant in the criminal case who was not the same counsel who had represented appellant in the bankruptcy proceedings.

On August 29, 1962, appellant appeared at the arraignment with his court appointed counsel. Again Judge Solomon inquired of appellant if he was satisfied to have him hear the case. Appellant answered in the affirmative. At the arraignment Judge Solomon inquired of appellant if he had been furnished a copy of the indictment, if he had read it, if he had gone over the matter with his counsel, if he was satisfied with the services of his counsel and the advice he received from him, to all of which questions the appellant answered in the affirmative. Judge Solomon also inquired of counsel if he had gone over the case with the appellant, and if the appellant knew the contents of each of the counts, to which questions counsel responded in the affirmative.

Prior to entry of the plea defendant was presented with and signed a statement that he had received a copy of the indictment and read the same; that he had discussed it with his attorney and fully understood the charges made

against him; that he had told his attorney all of the facts surrounding and concerning the matters set forth in the indictment, and that he had advised him that the maximum punishment for the offenses charged in Counts 2 and 5 of the indictment was ten years imprisonment and a fine of $10,000; that no official or anyone else had advised appellant that he would receive a lighter sentence or probation if he would plead guilty; that he wanted to plead guilty to Counts 2 and 5 of the indictment because he was guilty; and that his offer to plead guilty was freely and voluntarily made with full knowledge of all of the circumstances. The same answers were given by the appellant when asked substantially the same questions by Judge Solomon. The court further inquired if any promises had been made to appellant other than the fact that if he entered pleas of guilty to Counts 2 and 5 the United States Attorney would move to dismiss the other Counts. Appellant stated that no other promises had been made to him. The Court then inquired of appellant if he knew that the court was the only one who could determine if the remaining counts should be dismissed, to which appellant replied that he did. Thereupon the Court inquired: "Are you pleading guilty solely because of the fact the Government is going to dismiss these other Counts or because of the fact that you are guilty of these offenses charged in 2 and 5?", to which appellant replied: "Because I am guilty of 2 and 5, sir." Whereupon defendant entered his plea of guilty to Counts 2 and 5. The Court thereupon referred the matter for a presentence investigation, and again inquired of appellant if he wanted some other Judge to impose sentence because of his relationship to the trustee.

On October 17, 1962, appellant was returned to Judge Solomon's court for imposition of sentence. At that time judgment of conviction was entered upon appellant's pleas of guilty, and appellant was committed to the custody of the Attorney General for a period of four years on Count 2, and for a period of three and one-half years on Count 5, the sentences to run consecutively and not concurrently for a total of seven and one-half years. Later Judge Solomon amended the judgment of conviction by adding a provision that the appellant would become eligible for parole at such time as the Board of Paroles might determine.

Appellant filed a motion to vacate and set aside his conviction pursuant to 28 U.S.C. § 2255 on May 31, 1963. The petition alleged that the appellant's rights under the Fifth Amendment were violated by reason of the bankruptcy court causing appellant to become a witness against himself (§ 5), that appellant's wife was compelled to testify without being warned of her rights under the Fifth Amendment (§ 6), that the United States had obtained illegal evidence by reason of the self-incriminating testimony (§ 7), and that counsel retained by appellant during his bankruptcy was incompetent (§ 8). On the same date appellant moved for appointment of counsel and for a Writ of Habeas Corpus Ad Testificandum. The application to file in forma pauperis was granted and James A. Larpenteur, Jr., was appointed counsel in the post-conviction proceedings.

On June 24, 1963, counsel filed an amended motion for Writ of Habeas Corpus Ad Testificandum, and also an amended motion to vacate and set aside judgment.

On July 11, 1963, the government filed a Motion to Dismiss.

On August 12, 1963, appellant appearing pro per filed a motion to dismiss court appointed counsel and motion to dismiss amended petition, and responding argument and points in memorandum. The motion asked the court for an order allowing appellant to handle his own case and to dismiss the documents filed by the court appointed counsel. On August 12, 1963, an order was entered relieving appointed counsel from further responsibility in connection with the post-conviction proceedings, setting aside all documents filed by court appointed counsel and granting appellant fifteen days within which to file an amended petition.

On August 20, 1963, appellant filed an amended motion to vacate and set aside the judgment and a motion requesting the court to disqualify itself from the post-conviction proceedings.

On August 20, 1963, District Judge William G. East entered an order reciting that The Honorable Gus J. Solomon had disqualified himself from further participation in the post-conviction proceedings and designated The Honorable William T. Beeks on designation to the District of Oregon to hear and preside over all further matters and proceedings in the cause.

On August 29, 1963, petitioner filed a further amended motion to vacate and set judgment aside and responding argument.

On October 3, 1963, The Honorable William T. Beeks filed his written opinion and order denying appellant's motion to vacate and set aside the judgment of conviction and sentence. He concluded that the appellant's motion, from the files and records in the case, conclusively demonstrated that petitioner was entitled to no relief.

The appeal before us is from such order.

We shall now consider appellant's specifications of error. Appellant's first contention is that Judge Beeks erred in not setting aside the judgment of conviction and sentence imposed by Judge Solomon on the ground that Judge Solomon was disqualified to preside in the criminal case when he discovered that his brother-in-law was the trustee of appellant's bankrupt estate. It is to be first noted that appellant's motion sought to have Judge Solomon disqualified in the post-conviction proceedings. On his own motion Judge Solomon did so. Appellant appears to argue that since Judge Solomon disqualified himself in the post-conviction proceedings that he was thereby compelled to set aside the judgment of conviction and sentence in the criminal case, and having failed to do so, Judge

Beeks should have done so. We do not agree.

The disqualification statute [2] provides:

"Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein."

The only ground of disqualification asserted by appellant is that a "conflict of interest" existed between appellant and his trustee in bankruptcy which might be prejudicial to appellant in the criminal proceedings since Judge Solomon might favor the trustee's testimony over appellant's because of the brother-in-law relationship existing between Judge Solomon and the trustee. Appellant points to no fact other than the relationship to support his contention. No objection was ever made to Judge Solomon's qualifications in the criminal proceedings. To the contrary, as above shown, Judge Solomon made appellant fully aware of the relationship at all stages of the criminal proceedings. Appellant was expressly satisfied to have Judge Solomon remain on the case. In these circumstances the matter of disqualification rested within the sound discretion of Judge Solomon. We see no abuse of such discretion. Furthermore, appellant waived any later objections as to Judge Solomon's qualification. See Neil v. United States, 205 F.2d 121 (9th Cir. 1953); Adams v. United States, 302 F.2d 307 (5th Cir. 1962).

In this same connection appellant complains because his counsel gave him no advice one way or the other on the subject of disqualification. Undoubtedly counsel left the matter for appellant's determination.

Appellant's second contention is that the Referee in Bankruptcy had the

2. 28 U.S.C. § 455.

duty to warn the appellant of his rights under the Fifth Amendment to the Constitution of the United States,[3] and failing to so warn, appellant was compelled to incriminate himself; that the provisions of the Bankruptcy Act which require the filing of schedules compels self-incrimination; that his defense attorney was incompetent for not pursuing these contentions, and that the government and defense counsel made a deal to obtain his plea of guilty. We see no merit in respect to appellant's claims that his rights under the Fifth Amendment were violated and that his court appointed counsel was incompetent. It is to be noted that appellant was convicted upon his pleas of guilty to Counts 2 and 5. No evidence was introduced against him arising out of the bankruptcy proceedings. As stated by this court in Thomas v. United States, 9 Cir., 290 F.2d 696, at page 697:

> "By his plea of guilty appellant foreclosed his right to raise objections to the manner in which evidence upon which he was indicted was obtained. This evidence, because of his guilty plea, was not used against him. Had he stood trial his objection to its introduction, if made and overruled by the trial court, could have been raised on appeal. Under the circumstances he may not belatedly raise the contention under 28 U.S.C. § 2255. Eberhart v. United States, 9 Cir., 1958, 262 F.2d 421. * * * The conviction and sentence which follow a plea of guilty are based solely and entirely upon said plea and not upon any evidence which may have been improperly acquired by the prosecuting authorities. United States v. French, 7 Cir., 1960, 274 F.2d 297; United States v. Sturm, 7 Cir., 1950, 180 F.2d 413; Kinney v. United States, 10 Cir., 1949, 177 F.2d 895."

Appellant's reliance upon Russell v. United States, 306 F.2d 402 (9th Cir. 1962) is misplaced. Russell involved the constitutionality of the compulsory registration provisions of Title 26 U.S.C. § 5841, a firearms law. Since the mere act of registration compelled incrimination this court held the statute unconstitutional. That statute is in nowise analogous to the Bankruptcy Act. The mere filing of a statement of affairs is not incriminating. Unlike the registration statutes the Bankruptcy Act does not deprive the bankrupt from asserting the privilege in response to any question, the answer to which the bankrupt considers incriminating. The Act specifically provides a privilege for incriminating testimony which is non-perjurous, and imposes no criminal sanctions for failure to file schedules.

Appellant's final contention that his pleas of guilty were not knowingly and voluntarily made because induced or coerced by the statement of the United States Attorney that the remaining counts would be dismissed upon pleas of guilty to Counts 2 and 5 is likewise without merit. This is not a case where appellant has at any time protested his innocence, or where the District Court accepted the plea without first determining whether or not it was made voluntarily and understandingly. Rule 11, Federal Rules of Criminal Procedure, was fully complied with in the arraignment proceedings. While on notice of the promise made by the United States Attorney the court carefully and searchingly interrogated appellant and his counsel both as to the understanding of the charge and to the effect of the promise on appellant's pleas of guilty. There are present here no elements of threat, ignorance, fear, force, mistake, misapprehension or fraud.

The order appealed from is affirmed.

---

3. The relevant provisions of the Fifth Amendment provide that no person shall be compelled in any criminal case to be a witness against himself.