Jackie Lee SESSIONS, Petitioner and
Appellant,

v.

Lawrence E. WILSON, Warden California
State Prison, San Quentin, California,
Respondent and Appellee.

No. 20861.

United States Court of Appeals
Ninth Circuit.

Nov. 28, 1966.

Dissenting Opinion Jan. 30, 1967.

---

Jackie Lee Sessions, in pro. per.

Thomas C. Lynch, Atty. Gen. of Cal., Robert R. Granucci and Jackson L. Smith, Deputy Attys. Gen., San Francisco, Cal., for appellee.

Before CHAMBERS, HAMLEY and CECIL,* Circuit Judges.

HAMLEY, Circuit Judge:

In January, 1957, in the Kern County, California Superior Court, Jackie Lee Sessions was convicted on his plea of guilty to the crime of armed robbery. Sessions, then eighteen years of age, was sentenced to imprisonment for from five years to life, and is presently confined at California State Prison, San Quentin, California. On January 13, 1966, he applied to the district court for a writ of habeas corpus. The application was denied, without hearing, on the day it was filed. Sessions appeals.

Sessions alleged in his application that he was interrogated while in police custody without being informed of his right to remain silent and his right to the assistance of counsel, that his request for such assistance at that time was denied, and that during the course of that interrogation the police officers made certain promises and threats.[1] Sessions alleged that, as a result of this interrogation, he involuntarily made certain incriminating statements which were testified to by police officers at his preliminary hearing. He also alleged that, as a result of this interrogation, he involuntarily signed a confession which was introduced in evidence at his preliminary hearing.

Sessions further alleged in his application that a revolver, obtained as a result of an unreasonable search and seizure, was introduced in evidence against him at the preliminary hearing. Additionally, he alleged that he did not have the assistance of counsel at the preliminary hearing and was not advised that he could remain silent. As a result of all of the circumstances described above Sessions averred, in effect, that he took the witness stand at the preliminary hearing and, without understanding his rights, involuntarily confessed to the crime.

Finally, Sessions alleged, his plea of guilty was brought about by duress, occasioned by the reception, at the preliminary hearing, of his signed confession, and of evidence pertaining to his incriminating statements, and of his own testimony at that hearing, all of which

---

* Lester L. Cecil, Senior Circuit Judge, Sixth Circuit, sitting by designation.

1. Among the allegations concerning promises and threats, were the following:
"During the extensive interrogation, deputy Head told petitioner that if petitioner would cooperate with him and admit the offense and sign a confession he would see to it that it would 'go easy' for petitioner, and that if petitioner refused to cooperate things would 'go very hard' for petitioner. Deputy Head informed petitioner that the revolver he had seized during the search of petitioner's house had been stolen from a Hardware Store in Lamont, California and that petitioner would be charged with violation of Section 459 of the Penal Code, burglary along with violation of Section 211a of the Penal Code, unless petitioner would sign a confession admitting the robbery. That if petitioner would make the signed confession to the robbery deputy Head would not charge petitioner with the burglary and that he, deputy Head would go to the judge who he said was a good friend of his and would recommend probation for petitioner and if petitioner would 'Cop Out' to the robbery the judge would surely give him straight probation since it was petitioner's first offense. Deputy Head told petitioner that the judge would 'go easy or hard' with petitioner, depending on the recommendation given by the arresting officer."

were assertedly the product of coercion and duress.

On this appeal Sessions argues, in effect, that his application states a prima facie case for habeas corpus relief, and that it was therefore error to deny his application without a hearing.

As indicated above, one of the allegations on which Sessions relies is that a revolver, which was obtained as a result of an illegal search and seizure, was received in evidence against him at the preliminary hearing.

■ Assuming that the seizure of the revolver was illegal under the Fourth Amendment, its use against Sessions at the 1957 preliminary hearing does not provide a basis for habeas corpus relief. The exclusionary rule applicable to the states was declared by the Supreme Court in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, decided on June 19, 1961. In Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, it was held that the exclusionary rule of *Mapp* would not be applied retroactively.

■ Sessions also alleges that he is entitled to a habeas hearing because he was not advised at the preliminary hearing that he was not required to testify. As noted above, he took the witness stand at that hearing and confessed to the crime.

Examination of the transcript of the preliminary hearing indicates that Sessions was not explicitly advised of his right to remain silent. Given a choice between two procedures, Sessions chose to take the witness stand immediately and testify regarding the charges.[2] The court told Sessions that if he admitted the charges, he could be held to answer for them in the Superior Court, and that any statement he might make on the witness stand could be used against him.

We do not believe the constitutional question Sessions thus seeks to raise is squarely presented here. While Sessions

was not explicitly warned of his right to remain silent, he was told on two different occasions that he need not take the witness stand unless he wished to. He chose to take the stand immediately in preference to the other suggested procedure, described in note 2, concerning which no indication was given that he would be expected to testify. More importantly, Sessions has not alleged that he did not, of his own knowledge, understand that he was entitled to remain silent at the time of the preliminary hearing. Under these circumstances we do not believe Sessions has a good Fifth Amendment point.

Sessions also alleged in his application that he is entitled to a hearing because law enforcement officers failed to follow approved procedure for in-custody interrogation. He averred that during his interrogation he was not advised of his right to remain silent, and to his right to the assistance of counsel, and that his request for such assistance at that time was denied.

■ If this advice was not given, and if this request was denied, interrogating officers did not comply with the requirements announced in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. However, apart from Sessions' allegation that his incriminating statements and confession, given as a result of this interrogation, were involuntary, his allegation that the interrogating officers did not comply with the specifics of *Escobedo* and *Miranda* provides no basis for habeas corpus relief. Sessions was convicted on January 15, 1957. Both *Escobedo* and *Miranda* were decided after that date, and neither is to be applied retroactively. See Johnson v. State of New Jersey, 384 U.S. 719, 722, 86 S.Ct. 1772, 16 L.Ed.2d 882; Davis v. State of North Carolina, 384 U.S. 737, 740, 86 S.Ct. 1761, 16 L.Ed.2d 895.

2. The other procedure which Sessions could have chosen was to have the hearing set for a later date, at which time the state would produce evidence against him and

he could produce evidence in his own defense, and cross examine the state's witnesses.

As the Court pointed out in both *Johnson* and *Davis* however, the non-retroactivity of *Escobedo* and *Miranda* does not affect a court's duty to consider the voluntariness of statements under the standards of voluntariness which had evolved prior to those decisions. The substantive test of voluntariness takes account of a failure to advise an accused of his privilege against self-incrimination or failure to allow him access to outside assistance. See Gladden v. Holland, 9 Cir., 366 F.2d 580, decided August 29, 1966. Here there is the additional allegation that the confession was the product of promises and threats by the interrogating officers.

Sessions entered a plea of guilty. This would ordinarily foreclose any relief on the ground that the prior incriminating statements and confession were involuntary. Sessions alleged in his application, however, that the incriminating statements and confession assertedly obtained from him by duress and coercion at the preliminary hearing " * * * placed 'Duress' upon petitioner to enter a plea of 'guilty'. * * * " In view of that allegation, the question of the voluntariness of the incriminating statements and of the confession were relevant to determine whether the plea of guilty was voluntary, and so that question was not foreclosed by the plea. See Gladden v. Holland, supra.

We hold that the allegation that the plea of guilty was involuntary, supported by the additional allegations concerning the way in which the police interrogation was conducted, stated a prima facie case for habeas corpus relief which should not have been denied without calling for a return to the application, and granting an evidentiary hearing.

Sessions also alleged in his application that he is entitled to a hearing because he did not have assistance of counsel at his preliminary hearing. The warden argues, however, that in California the preliminary examination is not a critical stage in the criminal proceedings which would constitutionally require appointment of counsel, citing Wilson v. Harris, 9 Cir., 351 F.2d 840.

This court did not so rule in *Harris*. The decision there announced contains four holdings: (1) under California law a preliminary examination is not "in and of itself" a critical stage in the judicial proceedings such as to constitutionally require the appointment of counsel at all such hearings; (2) a California preliminary hearing may be "critical," however, under the circumstances of a particular case and it is therefore necessary to examine the circumstances of each case; (3) such a hearing is critical if the events which transpire at that hearing are likely to prejudice the effectiveness of legal assistance in the subsequent proceedings; and (4) applying that test to the particular circumstances of the *Harris* case, that preliminary hearing was not critical.

The pertinent question here, then, is whether in view of the events which transpired at Sessions' preliminary hearing, as described above, the effectiveness of his legal assistance in subsequent proceedings was impaired. This cannot be determined from the face of the application. The court, therefore, was put on inquiry as to whether the preliminary hearing was critical in this case. Yet the district court conducted no such inquiry, and denied the application without hearing.

There is also the further question of whether Sessions knowingly and intelligently waived counsel at his preliminary hearing. Examination of the transcript of that hearing indicates that Sessions was advised by the court that he was entitled to counsel and that one would be appointed by the court if Sessions desired. In response, Sessions told the court that he did not want an attorney.

An accused, in the exercise of a free and intelligent choice, with the considered approval of the court, may competently and intelligently waive his constitutional right to assistance of counsel. Adams v. United States ex rel. McCann, 317 U.S. 269, 275, 63 S.Ct. 236, 87 L.Ed. 268; Arellanes v. United States, 9 Cir., 302 F.2d 603, 610. If that is what hap-

pened here, it would make no difference whether this particular preliminary hearing was a critical stage of the criminal proceeding such as to give application to the constitutional right to counsel. See *Harris*, 351 F.2d at 845.

■ But Sessions alleged in his petition, in effect, that his waiver of counsel at the preliminary hearing was not intelligently and understandingly given. He may advance such a contention even though he expressly waived counsel in court, and even though he pleaded guilty. Von Moltke v. Gillies, 332 U.S. 708, 709, 727, 68 S.Ct. 316, 92 L.Ed. 309, United States v. Washington, 3 Cir., 341 F.2d 277, 284.

According to Sessions' application, he was only eighteen years old at the time of the preliminary hearing. He also alleged that he was "ignorant of the facts of law." The transcript of the preliminary hearing indicates that the complaint charging armed robbery was read to Sessions. The court, however, did not inquire as to whether Sessions was aware of the statutory offenses included within the charge, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof.[3]

Under these circumstances, the district court in this habeas corpus proceeding was put on inquiry as to whether the waiver of counsel was intelligently and knowingly given. The district court erred in denying this application without making such an inquiry.

The order denying the application is set aside, and the cause is remanded for further proceedings consistent with this opinion.

CHAMBERS, Circuit Judge (dissenting):

I concurred in the majority opinion filed November 28, 1966. At this late date, January 30, 1967, I have decided that I should dissent.

Sessions here entered a plea of guilty. He now claims that events transpiring before he entered the plea were such that duress was placed upon him. The majority holds that appellant has alleged suf-

3. In Von Moltke v. Gillies, supra, the Supreme Court stated the following:

"We have said: 'The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.'[6] (6 Johnson v. Zerbst, 304 U.S. 458, 465 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 146 A.L.R. 357]; see also Adams v. United States ex rel. McCann, 317 U.S. 269, 270 [63 S.Ct. 236, 237, 87 L.Ed. 268, 143 A.L.R. 435].) To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel,[7] (7 Johnson v. Zerbst, 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 146 A.L.R. 357]; Glasser v. United States, 315 U.S. 60, 70 [62 S.Ct. 457, 465, 86 L.Ed. 680]) a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all of the circumstances under which such a plea is tendered." (332 U.S. at 723–724, 68 S.Ct. at 323)

*Von Moltke* was decided before Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595, had been overruled by Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, and so limited its holding to cases in which a defendant's life was at stake. But with Betts v. Brady now out of the way there is no reason to believe the principles announced in *Von Moltke* do not apply to any criminal proceeding in which the accused is entitled to counsel.

ficient facts indicating coercion that he should have been given a hearing. I disagree.

Appellant contends that the circumstances of his age (18) and the promises that he alleges the police made him (that they would see that the judge went easy on him and that no charge of burglary would be made) constituted coercion. Appellant correctly maintains that one test in determining whether a confession has been coerced is to ask if the accused's will was "overborne" at the time he confessed, Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948. He is not able, however, to bring his own situation within the facts of the "coercion" cases that he claims are controlling. He does not say he was irrational as was the defendant in Blackburn v. State of Alabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242; no threats of retribution against his family are asserted as in Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265, and Harris v. State of South Carolina, 338 U.S. 68, 69 S.Ct. 1354, 93 L.Ed. 1815; there was no marathon period of questioning by teams of interrogators as in Ashcraft v. State of Tennessee, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192, and Gladden v. Holland, 9 Cir., 366 F.2d 580; and petitioner was not injured when questioned as was the case in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908.

At the time the alleged coercion took place, the preliminary examination record indicates that petitioner was a fairly articulate eighteen-year-old who held down a job and owned a car. After being arrested he confessed to the armed holdup of a tavern. He asked for counsel directly after his arrest, but his request was denied. He then alleges that he was told that if he confessed things would go easier for him and that a potential burglary charge would be dropped. He did confess and then repeated the confes-

sion in court after waiving the proffered offer of counsel.[1]

As a result of the Supreme Court's decisions in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the likelihood of the present case arising on new facts is remote. But these cases do not apply here as Sessions was convicted on January 15, 1957. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882. It would seem that one of the reasons for the Supreme Court's decisions in Escobedo and Miranda was to fill the gap between where the "coercion" cases leave off and where fair conduct begins. Thus, Escobedo was questioned by police officers, one of whom had grown up in his neighborhood, was denied access to counsel, was questioned while handcuffed in a standing position, and was more or less tricked into admitting complicity in a murder when it was obvious that he did not realize that " * * * an admission of 'mere' complicity in the murder plot was legally as damaging as an admission of firing the fatal shots." 378 U.S. at 486, 84 S.Ct. at 1762. Despite these facts, the Supreme Court made no finding of coercion, but focused on the issue of denial of counsel.

Every alleged threat or promise of favor made to a prisoner does not call for an evidentiary hearing. Neither common sense nor controlling principles of law indicate such a result. We should be especially leery of such a doctrine in cases where a guilty plea has been entered.

Sessions also claims that he was entitled to counsel at his preliminary hearing. If we concede that the preliminary examination was a critical stage in the proceeding and therefore counsel should have been appointed, Wilson v. Harris, 9 Cir., 351 F.2d 840, it is apparent that petitioner intelligently waived counsel. As stated above, Sessions, at the time of the trial, was an articulate eighteen-year-old

1. It is worthy of note that during his hearing Sessions stated that he was making his confession voluntarily and that nothing had been promised him to induce him to make it.

with a job and a car. At the preliminary examination the judge carefully read the complaint charging Sessions with armed robbery. The judge then twice told petitioner that he had a right to counsel and then told him that he had the right to a reasonable time in which to secure counsel and that the court would appoint counsel for him if he wished. He was then twice asked if he wanted an attorney and twice answered that he did not. He then indicated that he wanted to take the stand immediately.

There is nothing in the record to indicate that appellant was not in a position to intelligently waive counsel. The trial judge seems to have gone out of his way to protect petitioner in this regard.

I disapprove of the language in the majority opinion which suggests that the trial judge must discuss with a defendant the necessarily included offenses contained within a crime with which he is charged, all possible defenses to the charge and circumstances in mitigation thereof. In an individual case some or all of these matters may merit discussion, but it is a mistake to make them a general requirement. I believe that these specifications have not been followed as a general rule by any district judge in the Ninth Circuit.

Of interest is the fact that the requirements that the majority would have us elevate to constitutional dimensions were suggested by way of dicta in the case of Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309. I read this case as standing for the proposition that a trial judge has a heavy burden in determining whether counsel is understandingly waived. I do not read it as requiring the trial judge to ask the specific questions that the majority points out were not asked here.

The Constitution contains no requirement that a person be forced to be represented by counsel. Carter v. People of State of Illinois, 329 U.S. 173, 67 S.Ct. 216, 91 L.Ed. 172; Von Moltke v. Gillies, supra; United States v. Redfield, D.C. Nev., 197 F.Supp. 559; aff'd per curiam,

9 Cir., 295 F.2d 249; United States v. Washington, 3rd Cir., 341 F.2d 277.

Sessions' petition for a writ of habeas corpus was turned down by the California Supreme Court. It was again denied by the district court. I see no reason why it should not be turned down here.

In sum, I think Miranda, supra, and Johnson, supra, are good authority for affirming here.