Oliver R. NORRIS, Appellant,

v.

Lawrence E. WILSON, Warden, California State Prison, San Quentin, California, Appellee.

No. 20700.

United States Court of Appeals Ninth Circuit.

May 23, 1967.

Oliver R. Norris, in pro. per.

Thomas C. Lynch, Atty. Gen., Robert R. Granucci, John T. Murphy, Deputy Attys. Gen., San Francisco, Cal., for appellee.

Before BARNES and BROWNING, Circuit Judges, and THOMPSON, District Judge.

BARNES, Circuit Judge:

This is an appeal from the denial of a writ of habeas corpus in the district court. (28 U.S.C. §§ 2241, 2253.)

On February 14, 1951, appellant was arrested for the armed robbery of a pharmacy in Stockton, California. He had been shot three times in the stomach and was taken to a hospital for emergency treatment. An operation was allegedly performed on him, using sodium pentothal as an anaesthetic.

On March 19, 1951, appellant was arraigned on two charges of armed robbery, but the arraignments were continued to March 20, 1951, so that an attorney could be appointed to represent appellant at the arraignments. At appellant's request, the public defender was appointed to represent him. A preliminary examination was waived by appellant, and he was bound over for trial.

On March 22, 1951, appellant, represented by his attorney, pleaded guilty to two counts in Information #10749 and one count in Information #10750. The matter was referred to the probation officer (Calif.Penal Code § 1203) and April 5th, 1951 was the date set for pronouncing sentence. At the sentencing, on April 5th, 1951 appellant, with his counsel present, expressly admitted he was in possession of a deadly weapon at the time he committed the two robberies with which he was charged. His attorney first admitted such possession for him, and appellant then expressly personally admitted such possession. Each armed robbery charged was found to be robbery in the first degree.

Appellant's counsel then spoke on appellant's behalf—urging because of the plea of guilt that the court impose concurrent, rather than consecutive, sentences. The district attorney opposed concurrent sentences, pointing out that the two first degree armed robberies occurred on different dates in different state jurisdictions. The vigor of counsel representing appellant is shown by the fact the judge continued the sentencing one day, to permit appellant's counsel to supply authorities on his contention that the court had no authority to order any sentence consecutive to a life sentence.

On April 6, 1951, appellant was sentenced to three consecutive sentences. The probation report indicates, in its recital of previous arrests and admitted convictions, why consecutive sentences had been recommended by the probation officer; and gives some indication why such a recommendation was followed by the trial judge.

Appellant in the court below originally urged that he had been improperly denied counsel. When he learned that *Escobedo* did not apply retroactively (Carrizosa v. Wilson, 244 F.Supp. 120 (D.C. 1965)), he stated he would "without conceding, not pursue this issue further." That his judgment was good was proved by the Supreme Court decision in Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), holding the *Escobedo* rule did not apply to cases tried before June 22, 1964.

Appellant's second contention is that his pleas of guilty were induced by (a) two alleged incriminating statements, one signed by him, and the second by his brother; (b) that he had been told his brother had already pled guilty.

■ This circuit has repeatedly held to the general rule that convictions which follow pleas of guilty are based solely and entirely upon the pleas entered, not upon any evidence which may have been previously acquired. "In the present case no confession was used because the plea of guilty in open court dispensed with proof of the crime." Townsend v. Burke, 334 U.S. 736, 738, 68 S.Ct. 1252, 1254, 92 L.Ed. 1690 (1948). Wallace v. Heinze, 351 F.2d 39 (9th Cir. 1965); Davis v. United States, 347 F.2d 374, 375 (9th Cir. 1965); Harris v. United States, 338 F.2d 75, 80 (9th Cir. 1964); Sullivan v. United States, 315 F.2d 304, 305 (10th Cir. 1963); Randall v. United States, 314 F.2d 800 (10th Cir. 1963); Bailey v. United States, 312 F.2d 679 (10th Cir. 1963); Thomas v. United States, 290 F. 2d 696, 697 (9th Cir. 1961); Watts v. United States, 107 U.S.App.D.C. 367, 278 F.2d 247 (1960); United States v. French, 274 F.2d 297 (7th Cir. 1960); Barnhart v. United States, 270 F.2d 866 (10th Cir. 1959); Eberhart v. United States, 262 F.2d 421 (9th Cir. 1958); United States v. Sturm, 180 F.2d 413 (7th Cir. 1950); Kinney v. United States, 177 F.2d 895 (10th Cir. 1949).

As recently as June 29, 1966, this court rendered its opinion in Hardee v. Wilson, 363 F.2d 848, wherein we stated:

"At the time of the trial, appellant, represented by private counsel of his choice, pleaded guilty. Thus, because of his plea of guilty made when represented by counsel, the appellant stands convicted, not because of a confession or statement, but by reason of his plea alone. This forecloses any collateral attack. Wallace v. Heinze, 351 F.2d 39 (9th Cir. 1965); Thomas v. United States, 290 F.2d 696–697 (9th Cir. 1961)." Id. at 849.

Appellant makes broad charges that "the pleas were the product of coercion and promise of leniency, which was not controverted by the return." The official reporter's transcript of the sentencing hearing, attached to the state's return as Exhibit F, shows precisely the contrary state of facts.

■ The pleas of guilty may well have been decided upon by appellant, with the advice and encouragement of his counsel because of their factual knowledge of the crimes charged, and that appellant's brother had confessed, involving appellant. But no coercion whatever is shown. The confession of a joint participant in a crime may influence a defendant, but it does not coerce him in a legal sense.

Appellant, a man seriously wounded in his gun fight with a police officer, may have been given sodium pentothal at a hospital on February 15, 1951, to permit an operation upon him in an attempt to save his life. We assume he was, but there is not the slightest indication in the allegations of fact of any effect of this drug, or any other coercion on appellant (a) when he allegedly signed his own incriminating statement on March 1, 1951 (which we assume was done); (b) when he pled guilty over a month later; (c) at his sentencing; nor (d) when he reaffirmed his guilt to the probation officer after his plea and before his sentencing.

Appellant's reference to the fact that "when he appeared in court for the preliminary examination, the only evidence that had been entered to bind him over to a higher court had been two confessions" is wholly inaccurate. There was no preliminary examination. The record discloses this appellant waived it. If he refers to arraignment, he is also inaccurate and incorrect, as no evidence was introduced save the three pleas and the admission that appellant was armed with a deadly weapon.

There is a recognized exception to the general rule that this court recognizes. In Com. of Pa. ex rel. Herman v. Claudy, 350 U.S. 116, at 118, 76 S.Ct. 223, at 224,

100 L.Ed. 126 (1955), Mr. Justice Black stated:

> "[a] conviction * * * on a plea of guilty based on a confession extorted by violence or by mental coercion is invalid under the Federal Due Process Clause; * * * where a denial of [this] constitutional protection is alleged in an appropriate proceeding by factual allegations not patently frivolous or false on a consideration of the whole record, the proceedings should not be summarily dismissed merely because a state prosecuting officer files an answer denying some or all of the allegations."

The fact recital in the *Claudy* case reveals clearly a charge of violent police action and an overreaching on the part of the prosecutor. Herman charged he was "grabbed by the neck" by a state trooper, who "threatened to choke him if he did not confess, and there were threats against the safety of his wife and daughter." (Id., p. 119, 76 S.Ct. p. 225.) Herman was interviewed seventy-two intermittent hours; he had no attorney; and he was not informed he could have counsel. He waived indictment and agreed to plead guilty to three charges. A month later the prosecuting attorney demanded he admit his guilt to some thirty charges, involving a maximum sentence of 315 years in prison. He did so plead.

While in *Claudy*, the threats and physical violence were denied by the prosecuting officers, the other charges were not. Such a partial denial is not enough, said the Supreme Court—Herman was entitled to a hearing of his charges.

We cannot find any similarity in the factual allegations of the petition before us. Much is conclusionary or immaterial. Here Norris complains not of being rushed into a plea, but of the court's delay in taking it. His interrogation is described as "merciless"; yet on the day it occurred he signed nothing. On a later date, some sixteen days after the injection of sodium pentothal, and after he was allegedly shown his brother's signed confession implicating him, he allegedly signed his own confession. (As to the effect of drugs and the per se incompetency of subsequent pleas or confessions, see Maez v. United States, 367 F.2d 139 (10th Cir. 1966).) Twenty days later, when represented by able counsel, he entered his plea of guilty.

No allegation of threats or physical abuse are here made. The only "taint" to appellant's confession is that "it was allegedly based" on alleged statements made by appellant when he was allegedly subjected to sodium pentothal. Nowhere does it factually appear that "the pleas entered were the coerced product of a tainted confession." Nowhere does appellant urge his innocence or state his confession was untrue.

Here there was no trial of the case, and no record thereof to bring before the court. The only record as to the proceedings when the pleas were received was before the district court in its entirety. In our Thomas v. United States case, supra, there was a denial of a *claim* of unlawful search, without requiring a hearing.

The trial judge, assessing the vague, conclusionary and immaterial facts alleged in petitioner's petition, was satisfied that petitioner intelligently entered his plea of guilty with the advice and cooperation of counsel, and without compulsion of any kind, and that no hearing was required. We agree.

Affirmed.

BROWNING, Circuit Judge (dissenting):

The appellant's petition for habeas corpus alleges that his guilty plea was the product of (1) a promise of leniency, and (2) a prior involuntary confession.

To avoid possible future misunderstanding, it should be emphasized that the majority does not hold that appellant's theory of relief is legally insufficient. Either of the grounds relied upon, if established by proof, would vitiate appellant's guilty plea, and the majority does not hold to the contrary. The holding is rather that appellant failed to allege either ground adequately.

It has long been axiomatic that a guilty plea induced by a promise of leniency is vulnerable to collateral attack.[1] The law has been less clear where the guilty plea was induced by a coerced confession. As the majority points out, there are numerous holdings that a guilty plea cannot be attacked on the bare ground that evidence against the accused was secured by unconstitutional means. The district court based its ruling on these decisions. "But," as Judge Duniway said in Doran v. Wilson, 369 F.2d 505, 507 (9th Cir. 1966), "there is another side to this legal coin. We have several times held that a guilty plea, 'induced' by a coerced confession, or in some other respect not truly voluntary, cannot stand. The basis for these decisions is that a guilty plea must not be a product of violation of fundamental constitutional rights. The distinction is that if such a violation is not claimed to be, or, if so claimed, is not what induced the plea, then reliance upon the violation in habeas corpus by the one who pleaded guilty is not justified because it is the plea, not the deprivation of constitutional right, that brought about the conviction, while the plea can be upset if it was induced by the violation."

The majority does not purport to overrule Doran and other cases from this circuit[2] establishing the rule that a conviction based upon a guilty plea must be set aside if the plea itself resulted from prior violation of the accused's constitutional rights. No panel of this court would assert such power.[3] Dismissal of appellant's petition therefore cannot be sustained on the ground relied upon by the district court.

As noted, the holding of the majority is placed upon a different ground. The majority holds that this appellant, despite his efforts to do so, failed to allege adequately that his guilty pleas were the product of either a promise of leniency or an involuntary confession.

The reasons which the majority advances for this conclusion do not seem well taken.

I

The principal rationale of the majority decision seems to be that the material allegations of appellant's petition are "vague" and "conclusory."

Although in a proper case the court has power to dismiss a petition for habeas corpus on this ground, it is rarely desirable to do so. The better practice is to direct the petitioner to amend, so that his claim may be decided on its merits with a minimum of delay and wasted effort.[4]

Appellant will undoubtedly file a new petition restating in expanded form essentially the same constitutional claim. The district court, and perhaps this court, will then be required to consider the matter anew. Many more months will pass before appellant's claim is considered on its merits. Nothing of substance will have been accomplished. Far more judicial effort will have been expended simply to formulate the issues than would have been necessary to decide appellant's claim on the merits at the out-

1. Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Trotter v. United States, 359 F.2d 419, 420 (2d Cir. 1966); Lattin v. Cox, 355 F.2d 397, 399 (10th Cir. 1966); Zaffarano v. United States, 306 F.2d 707 (9th Cir. 1962). Cf. Cortez v. United States, 337 F.2d 699 (9th Cir. 1964).

2. In addition to other Ninth Circuit cases cited in Doran, see Johnson v. Wilson, 371 F.2d 911 (9th Cir. 1967); Sessions v. Wilson, 372 F.2d 366 (9th Cir. 1966); Hale v. Wilson, 364 F.2d 906 (9th Cir. 1966). The leading case, of course, is

Com. of Pa. ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126 (1956).

3. Ellis v. Carter, 291 F.2d 270, 273 n. 3 (9th Cir. 1961).

4. Sanders v. United States, 373 U.S. 1, 19–20, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); Rivera v. United States, 318 F.2d 606, 608–609 (9th Cir. 1963). Cf. Wilson v. Wilson, 372 F.2d 211 (9th Cir. 1967); Castro v. Klinger, 373 F.2d 847 (9th Cir. 1967); and Pembrook v. Wilson 370 F.2d 37, 39 n. 4 (9th Cir. 1966).

set, even if that required a full-scale evidentiary hearing.[5]

Moreover, giving the allegations of the petition the liberal construction to which they are entitled,[6] they are sufficient to withstand dismissal.

The allegations regarding a promise of leniency may be unduly cryptic,[7] but those describing the circumstances of appellant's confession are reasonably clear and in considerable detail.[8] They are at least as adequate, in these respects, as the

---

5. One day or less was required in 94% of the evidentiary hearings on habeas corpus applications held in United States district courts during the fiscal year ending June 30, 1966 (528 of 564). Only a fraction of a day was required for 69% of such hearings (387 of 564). Only three required as much as four days. Annual Report of the Administrative Office of the U.S. Courts (1966), Table C8.

A study by Justice Frankfurter reported in Brown v. Allen, 344 U.S. 443, 529, 73 S.Ct. 397, 437, 97 L.Ed. 469 (1953), showed that 16 out of 44 such hearings required one hour or less, and only one required more than four hours.

6. Pembrook v. Wilson, supra, 370 F.2d 37, 40 n. 5 (9th Cir. 1966); Wright v. Dickson, 336 F.2d 878, 881 (9th Cir. 1964); Pike v. Dickson, 323 F.2d 856, 857 n. 1 (9th Cir. 1963); State of Oregon ex rel. Sherwood v. Gladden, 240 F. 2d 910, 912 (9th Cir. 1957). And see Holiday v. Johnston, 313 U.S. 342, 352, 61 S.Ct. 1015, 85 L.Ed. 1392 (1941).

7. Appellant alleges simply that his appointed counsel "informed him that the district attorney and the court had agreed to run the sentences concurrently."

8. Appellant alleges:

Petitioner was crawling on the lawn of a Stockton resident. The resident, seeing that petitioner was injured, called the police. When the police arrived they discovered that petitioner had been shot 3 times in the stomach, and therefore assumed that he was the alleged robber.

While waiting for the ambulance the police continually questioned petitioner. Although petitioner was in critical condition he remained conscious, and denied knowing anything about a robbery.

When petitioner arrived at the County Hospital he was immediately put on the operating table. The police officer and the attending physician were arguing about the petitioner's condition. Although the petitioner had been shot 3 times in the stomach the police officer insisted that the doctor give petitioner an injection of Sodium-penthol [sic] so that he (the officer) could question him about the other man involved in the robbery. The last thing petitioner

remembers before losing consciousness, was the officer telling the doctor he (the officer) didn't give a damn whether he lived or died, he just wanted the other man involved in the robbery. The officer told the doctor that an officer has also been shot and he wanted the other one.

At this point, petitioner lost consciousness. When he came to, approximately 4 days later, the district attorney and a stenographer were called for by the officer on duty. When they arrived petitioner was again interrogated mercilessly. The district attorney showed petitioner a hand.written confession taken from him while he was on the operating table, and under the influence of sodium-penthol. [sic]

The district attorney questioned petitioner about the confession and his brother Don Norris until he was ordered by the doctor to leave.

On about the 1st of March, the district attorney was back again. On this occasion he had a typewritten confession which was signed by the petitioner's brother, and which named petitioner and himself as the robbers, and also named petitioner as the one who had shot the officer.

The district attorney once again interrogated petitioner, and continued doing so until petitioner agreed to sign the typewritten confession that the district attorney had made from the notes which had been taken from petitioner while he had been under the influence of the sodium-penthol [sic] injection. [R. 12b–14]

*   *   *   *   *

This petition *clearly* asserts a Fourteenth Amendment claim when it alleges in substance, that; the incriminating statements were elicited while petitioner was on the operating table fighting for his life, and while the police officers insisted, at this time, that he be given an injection *(which he was)* of sodium-penthol.

During the period from 14 February 1951, to 1 March 1951, petitioner was held incommunicado, was not allowed any contact whatever with the outside world, and was not brought before a magistrate; and, during this period of

assertedly "conclusionary" averments which this court sustained in Pembrook v. Wilson, supra, 370 F.2d 37, 39 (9th Cir. 1966).

As to the relationship between his confession and guilty pleas, appellant alleges in so many words that the latter were motivated by fear that the confession would be used against him.[9] Although the majority also finds this allegation "conclusory,"[10] it is difficult to understand how the requisite state of mind could be alleged with greater particularity. Other panels of this court have recently sustained allegations of guilty plea motivation which were similarly direct and unadorned. The allegation approved

in Sessions v. Wilson, supra, 372 F.2d 366, 369 (9th Cir. 1966), was that involuntary incriminating statements and confessions "placed 'Duress' upon petitioner to enter a plea of 'guilty.'" The allegation held adequate in Doran v. Wilson, supra, 369 F.2d 505, 506 n. 1 (9th Cir. 1966), read, "the belief that his verbal statement of guilt unconstitutionally obtained would be used against him in a trial to bring about a verdict of guilty was in large part responsible for petitioners plea of guilty."

II

The majority criticizes appellant's allegations in a number of other respects. Much of this criticism is based upon a

custody petitioner was mercilessly interrogated by law enforcement officials; and, also during this period of custody petitioner was under constant guard and he made repeated requests to be allowed to call or contact his family, all of which were denied him. On the 16th day of custody the district attorney of San Joaquin County, Stockton, California began to intensify these coercive tactics by telling petitioner that the officer who had been shot was dead, and that the petitioner's brother had signed a confession and that the only way petitioner could keep his brother or himself out of the gas chamber at San Quentin Prison was to sign the confession taken from petitioner while he was under the influence of the sodium-penthol [sic] injection. Petitioner was continually denied communication with the outside world until he had been coerced to sign the confession. [R. 16–17]

\* \* \* \* \*

The investigation in the case at bar was no longer a general inquiry into an unsolved crime, but had begun to focus on petitioner as a particular suspect. Petitioner was under arrest and had been interrogated while under the influence of a sodium-penthol [sic] injection and at a time when petitioner was fighting for his life on an operating table in a hospital.

Petitioner was under arrest prior to being taken to the San Joaquin County Hospital and was kept under constant guard while there.

The district attorney's office carried out a process of interrogation that lent itself to eliciting incriminating statements. Petitioner was interrogated un-

mercifully after regaining consciousness. This interrogation continued periodically until petitioner signed the confession taken from him while on the operating table, under the influence of an injection of sodium-penthol. [sic]

Petitioner was held incommunicado from the time of his arrest until he signed the confession.

At no time was petitioner advised of his right to counsel, or of his right to remain silent, or that anything he said could or would be used against him. [R. 17–18]

\* \* \* \* \*

In the case at bar petitioner and his co-defendant were interrogated without counsel. Petitioner was under the influence of a sodium-penthol [sic] injection. He was not advised of his constitutional rights, nor did he know of such rights. [R. 20]

9. In his petition appellant alleges: "Petitioner had signed a coerced confession and the public defender and district attorney had told petitioner that the confessions would be used against him at time of trial. Fearing the introduction of the confessions, petitioner pled guilty and threw himself on the mercy of the court." [R. 19]

In his application for rehearing in the district court, appellant states, "petitioner specifically alleges that pleas were coerced by threat of trial use of sodium pentothal coerced confessions \* \* \*." [R. 53]

10. This appears to be the implication of the majority's statement that "Nowhere does it factually appear that 'the pleas were the coerced product of a tainted confession.'"

misreading of the petition; the remainder relates to irrelevant matters.

Setting aside appellant's assertion that his plea was the product of a promise of leniency, his allegations may be summarized as follows:

On February 14, 1951, appellant was arrested and taken to a hospital, grievously wounded. He was interrogated while in an operating room under the influence of drugs which had been administered for the purpose of extracting a confession, and an oral confession was taken. From February 14 until March 1 he was subjected periodically to "merciless" questioning to induce him to sign a written confession. He was held incommunicado and under constant guard throughout this period, and was not brought before a magistrate. His repeated requests for permission to contact his family were denied. He was shown handwritten notes of the oral confession taken while he was drugged. He was told that an officer who had been shot during the commission of the crime had died (which was untrue), that appellant's brother had signed a confession, and that the only way he could save himself and his brother from execution was to sign a typewritten confession based upon the confession taken while he was drugged. He was not advised of his right to counsel, or of his right to remain silent. He was not told that anything he said could be used against him. He did not know his constitutional rights. The incommunicado interrogation continued until appellant signed a confession on March 1. The public defender and the district attorney told him that the confession thus procured would be used against him if he stood trial. He pleaded guilty for that reason.[11]

These allegations make out a prima facie case. If the statement of February 14 was drug-induced, the Fourteenth Amendment would bar its use for any purpose. Townsend v. Sain, 372 U.S. 293, 307–309, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). The written confession of March 1 would also be barred as "fruit" of the earlier drug-induced statement if obtained by use of the latter in circumstances negating an inference that it "was sufficiently an act of free will to purge the primary taint of the unlawful invasion." Wong Sun v. United States, 371 U.S. 471, 484–486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963). See also Fahy v. State of Connecticut, 375 U.S. 85, 90–91, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). Moreover, if the March 1 statement was taken in the circumstances alleged—following: an oral confession obtained by interrogation while appellant was severely wounded and drugged; intermittent questioning during an extended period of incommunicado detention; use of the involuntary oral confession; a deliberate falsification to create fear of a murder charge; a threat of the death penalty for the accused and his brother; denial of appellant's requests for counsel; appellant's ignorance of his right to remain silent—the confession would be vulnerable to constitutional attack on the additional ground that it did not result from a free and rational choice by appellant to make a statement regarding his involvment in the offense rather than to exercise his constitutional right to remain silent.[12] And as the authorities cited earlier demonstrate, a guilty plea based upon a confession so obtained could not stand.[13]

The faults which the majority finds in appellant's allegations are considered below in the order stated in the majority opinion.

The majority notes appellant's "broad charges" that his "pleas were the product of coercion and promise of leniency," but asserts that the transcript of the sen-

11. See notes 8 and 9.

12. Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); Haynes v. State of Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); Gallegos v. State of Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed. 2d 325 (1962). Cf. Miranda v. State of Ariz., 384 U.S. 436, 460–462, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

13. See note 2.

tencing hearing "shows precisely the contrary state of facts." One insurmountable difficulty with this assertion is that appellant's factual allegations "related primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light." Machibroda v. United States, supra, 368 U.S. 487, 494–495, 82 S.Ct. 510, 514, 7 L.Ed.2d 473 (1962).[14]

The majority suggests that appellant's guilty pleas "may well have been" based upon "factual knowledge of the crimes charged, and that appellant's brother had confessed, involving appellant." But as noted above, appellant alleges that his guilty pleas were based upon a promise of leniency and fear that his involuntary confession would be used against him. Neither the district court nor this court can resolve the factual issues of appellant's motivation against him on the basis of suppositions as to what that motivation "may well have been", without hearing appellant's evidence.

The majority complains that there is no allegation that the effect of the drug administered to appellant on February 14 continued to March 1, when he signed a confession, or thereafter. Such an allegation would furnish an additional factual basis upon which the confession of March 1 would be inadmissible, but it is obviously unnecessary to either of the two grounds of inadmissibility which appellant's present allegations disclose.

The majority's further assertion, in the same sentence, that appellant does not allege that he was subject to any other coercive influences when he signed the March 1 confession ignores the whole thrust of appellant's claim. As noted, appellant alleges that his right to freely choose whether or not to speak about his involvement in the alleged offense was frustrated by a variety of improper influences (including the use of the February 14 drug-induced confession) which began on February 14 and continued until he signed the March 1 confession. Moreover, the absence of coercive influences in the interval between the first and second confessions would not bar relief on the ground that the second confession was the "fruit" of the first.

It is immaterial that improper influences are not alleged to have continued to the time of appellant's guilty plea, or to the time of his sentencing. As *Doran* and similar cases hold, it is enough that appellant's guilty plea was motivated by fear that his illegally obtained confession would be used against him.

It is also irrelevant that appellant does not allege that he was subject to coercion when subsequent to his plea he admitted guilt to a probation officer. Neither the truth or falsity of appellant's confession nor the guilt or innocence of appellant is at issue. Coerced confessions are excluded whether true or false "because the methods used to extract them offend an underlying principle in the enforcement of our criminal law: that ours is an accusatorial and not an inquisitional system * * *." Rogers v. Richmond, 365 U.S. 534, 541, 81 S.Ct. 735, 739, 5 L.Ed. 2d 760 (1961).[15] An improperly induced guilty plea is invalid whether the accused is guilty or innocent because the culpable as well as the guiltless are entitled to stand trial and put the government to its proof. "Constitutional safeguards for the protection of all who are charged with offenses are not to be disregarded in order to inflict merited punishment on some who are guilty." Ex Parte Quirin, 317 U.S. 1, 25, 63 S.Ct. 1, 9, 87 L.Ed. 3 (1942).[16]

14. See also Sanders v. United States, 373 U.S. 1, 19–20, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). Cf. Gladden v. Gidley, 337 F.2d 575 (9th Cir. 1964); Perry v. United States, 332 F.2d 369 (9th Cir. 1964); Brubaker v. Dickson, 310 F.2d 30, 32 (9th Cir. 1962).

15. See also Davis v. State of North Carolina, 384 U.S. 737, 739, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); Haynes v. State of Washington, 373 U.S. 503, 518, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963).

16. See also Kercheval v. United States, 274 U.S. 220, 224, 47 S.Ct. 582, 71 L.Ed. 1009 (1927); United States v. Morin, 265 F.2d 241, 245 (3d Cir. 1959).

The majority's comment upon the apparent inaccuracy of appellant's allegation regarding a preliminary hearing is likewise irrelevant to any issue presented.

The majority distinguishes Com. of Pa. ex rel. Herman v. Claudy, supra, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126, by "color matching" the facts of that case and this. The facts of Com. of Pa. ex rel. Herman v. Claudy may never be precisely duplicated, but the principle there established authorizes collateral attack in every case in which a guilty plea is based upon a confession obtained by unconstitutional means. Appellant's allegations bring him within that principle.

There is a suggestion in this portion of the majority opinion that it was significant to the decision in Com. of Pa. ex rel. Herman v. Claudy that the state denied some but not all of Herman's allegations. The majority states, "Such a partial denial is not enough, said the Supreme Court." Nothing in Com. of Pa. ex rel. Herman v. Claudy supports this suggestion. To the contrary, the Supreme Court specifically stated that "the proceeding should not be summarily dismissed merely because a state prosecuting officer files an answer denying some *or all* of the allegations." 350 U.S. at 119, 76 S.Ct. at 225. (Emphasis added.) Indeed, this must be the rule for a denial of the petitioner's allegations simply creates a factual issue which must then be resolved on the evidence. Cf. Wright v. Dickson, 336 F.2d 878, 882–883 (9th Cir. 1964), and cases cited therein.

The majority points out that appellant does not complain that he was rushed into tendering his guilty plea; that he describes his interrogation as "merciless"

but "on the day of it" [17] signed nothing; that appellant signed his confession sixteen days after the drug was administered, and only after he had seen his brother's confession implicating him; and that twenty days more elapsed before he pleaded guilty. These and other deprecating references to appellant's allegations suggest that the decision does not rest upon the inadequacy of appellant's allegations as to the involuntariness of his confession and the motivation of his plea, but rather upon the majority's conclusion that these allegations are not to be believed. But the law is clear that a petitioner cannot be denied an opportunity to support his allegations by evidence because the judge thinks they are "improbable and unbelievable" (Walker v. Johnston, 312 U.S. 275, 287, 61 S.Ct. 574, 85 L.Ed. 830 (1941)), or "tax credulity" (Waley v. Johnston, 316 U.S. 101, 104, 62 S.Ct. 964, 86 L.Ed. 1302 (1942)).[18] Only allegations "patently frivolous or false on a consideration of the whole record" may be ignored. Com. of Pa. ex rel. Herman v. Claudy, supra, 350 U.S. 116, 118–119, 76 S.Ct. 223, 225 (1956). The majority does not undertake to hold that appellant's allegations fall in the latter category.

The majority's statement that no threats are alleged ignores appellant's allegation that he was told that he and his brother could escape execution only if appellant confessed.[19] The absence of an allegation of physical abuse is of course irrelevant.[20] The allegations of appellant's petition belie on their face the majority's statement that "the only 'taint' to appellant's confession is that 'it was allegedly based' on alleged statements made by appellant when he was allegedly

---

17. Appellant alleges that he was questioned intermittently throughout his lengthy detention. See note 9.

18. Cf. Machibroda v. United States, 368 U.S. 487, 495–496, 82 S.Ct. 510, 7 L.Ed. 2d 473 (1962); Semet v. United States, 369 F.2d 90, 92 (10th Cir. 1966); United States ex rel. McGrath v. LaVallee, 319 F.2d 308, 312 (2d Cir. 1963).

19. See note 8.

20. See, e.g., Haynes v. State of Washington, 373 U.S. 503, 504 n. 1, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); Watts v. State of Indiana, 338 U.S. 49, 53–54, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949); Haley v. State of Ohio, 332 U.S. 596, 606, 68 S.Ct. 302, 92 L.Ed. 224 (1948) (Frankfurter, J., concurring).

subjected to sodium pentothal," and that it does not "factually appear" that appellant's plea was the product of the involuntary confession.[21] The majority's concluding complaint that "Nowhere does appellant urge his innocence or state his confession was untrue," only repeats an irrelevant circumstance.

The judgment should be reversed.