UNITED STATES of America ex rel.
Albert ACKERMAN, Appellant,

v.

Harry E. RUSSELL, Superintendent, State
Correctional Institution, Huntingdon,
Pennsylvania.

No. 16707.

United States Court of Appeals
Third Circuit.

Submitted on Briefs Nov. 9, 1967.

Decided Jan. 10, 1968.

Albert Ackerman, pro se.

John Fuller, Asst. Dist. Atty., Vincent
J. Pepicelli, Dist. Atty., of Crawford
County, Meadville, Pa., for appellee.

Before STALEY, Chief Judge, and
KALODNER and FORMAN, Circuit
Judges.

OPINION OF THE COURT

FORMAN, Circuit Judge.

On June 29, 1961, the appellant, Albert
Ackerman, was arrested in Meadville,

Crawford County, Pennsylvania on a charge of burglary and larceny. While in the Crawford County Jail he was charged with conspiracy to commit a prison breach. On August 7, 1961, the record indicates that he waived indictment and the appointment of counsel and pleaded guilty to the conspiracy offense before the late Judge Herbert A. Mook in the Court of Oyer and Terminer and General Jail Delivery of Crawford County. On September 5, 1961, the record indicates that he similarly waived indictment and the appointment of counsel and pleaded guilty in the same court to the indictment charging him with burglary and larceny.[1] No transcripts of the hearings at which these guilty pleas were entered are available, but it is conceded that appellant was not represented by counsel. On September 26, 1961, appellant was sentenced by Judge Mook to a term of two to four years on the burglary and larceny charge and to a term of one to two years on the conspiracy charge, each sentence to run consecutively.[2]

In 1963 appellant petitioned the Court of Common Pleas of Crawford County for a writ of habeas corpus raising the same issues renewed here, that is, whether the waiver of counsel and the entry of guilty pleas were valid under the Federal Constitution. Counsel was

appointed for appellant, and on November 22, 1963, a hearing was held before Judge Mook who had imposed the sentences on him. Judge Mook died before deciding the habeas corpus case and Judge John A. Cherry reviewed the transcript of the hearing and entered an order on October 8, 1964 denying the petition for the writ. After exhausting his state remedies, appellant filed a petition in the United States District Court for the Middle District of Pennsylvania for a writ of habeas corpus. On the basis of the transcript of the hearing before Judge Mook, as reviewed by Judge Cherry, the petition was denied by the United States District Court for the Western District of Pennsylvania, to which the case had been transferred.[3]

The appellee concedes that the principle enunciated in Gideon v. Wainwright,[4] which requires the appointment of counsel for all indigent defendants accused of serious crimes in state courts, applies to this proceeding.[5] He contends, however, that appellant waived his right to the assistance of counsel.

Aside from the signed statements of appellant there is only his testimony concerning the colloquy that occurred between Judge Mook and him when his guilty pleas were taken. It appears in the transcript of the hearing on his writ

---

1. Appellant signed rubber stamped statements on the backs of forms of indictment charging him with the offenses in which were noted his pleas of guilty and that he waived presentment to the grand jury and the appointment of counsel. For a description of a similar procedure see United States ex rel. Wright v. Myers, 265 F.Supp. 483 (E.D.Pa.1967).

2. Appellant did not begin serving these sentences until April 1965 because of his detention on prior sentences.

3. Specifically in its Memorandum Order filed March 15, 1967, the District Court's affirming language was:
   "After most careful scrutiny and evaluation of all civil and criminal proceedings which stem from a state penal confinement of the petitioner, the conclusion is required that the petitioner knowingly and voluntarily, with a full and complete understanding of his

Constitutional rights, entered pleas of guilty to the state crimes for which he is now confined; and that he voluntarily, knowingly and willingly waived his right to legal counsel.
   "In view of the conclusion reached, the granting of a hearing in the federal jurisdiction is not required or justified. U. S. ex rel. Tillery v. Cavell, 294 F. 2d 12 (3rd Cir.)."

4. 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

5. The Pennsylvania Supreme Court has specifically held that the *Gideon* rule is to be applied retrospectively. Commonwealth ex rel. Goodfellow v. Rundle, 415 Pa. 528, 204 A.2d 446 (1964); Commonwealth ex rel. O'Lock v. Rundle, 415 Pa. 515, 204 A.2d 439 (1964); Commonwealth ex rel. McCray v. Rundle, 415 Pa. 65, 202 A.2d 303 (1964).

of habeas corpus. On direct examination he was asked and answered:

"Q. Was any mention made by the Court to you with respect to the appointment of a lawyer or counsel for you?

"A. Yes sir.

"Q. What did he say?

"A. He said I waive my rights to counsel and just sign the guilty plea.

"Q. What if anything was said to you while you were in open court with respect to the availability of a lawyer for you?

"A. He said I had a right to counsel, and I didn't have no money, I couldn't pay for one."

\*　\*　\*　\*　\*　\*

"Q. Did he indicate that a lawyer could be appointed for you?

"A. He said I could have one.

"Q. What did you understand by that statement?

"A. That means I'd have to pay for it."

\*　\*　\*　\*　\*　\*

"Q. Weren't you told by the Court that a lawyer could be appointed for you?

"A. Yes sir, I understood that.

"Q. What did you understand that to mean with respect to whether or not the lawyer would be compensated by you?

"A. I understood that I had to pay for the lawyer or else you don't get a lawyer unless you pay for it.

"Q. Did you have any money at that time?

"A. No sir, I did not.

"Q. You then signed the waiver which is on the back of this indictment?

"A. Yes sir.

"Q. And entered a plea of guilty?

"A. Yes sir."

On cross-examination, appellant persisted in testifying that it was his notion that even though an attorney were appointed for him he would be obligated to pay for the service.

■ To be a valid waiver of such a fundamental constitutional right as the right to counsel must be intelligently and understandingly made.[6] Appellant, of course, admits that he declined the appointment of counsel which was offered to him, but he argues, as the above testimony reveals, that he did not understand that the appointment of counsel would be at the Commonwealth's expense. Since "a waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege,"[7] appellant contends he did not validly waive his right to counsel.

■ The governing principle for determining what constitutes a competent and valid waiver of the right to counsel and responsibility of the trial judge in accepting such a waiver in light of the strong presumption against waiver is stated in Von Moltke v. Gilles, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948):

"To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts esssential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered."[8]

6. Moore v. State of Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957); Johnson v. Zerbst, 304 U.S. 458, 58 S. Ct. 1019, 82 L.Ed. 1461 (1938).

7. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

8. The Pennsylvania Supreme Court has recognized the applicability of this rule in Commonwealth ex rel. McCray v. Rundle, supra note 5. In Commonwealth ex rel. O'Lock v. Rundle, supra note 5 it alerted the trial courts of the Commonwealth to deliberately inform indigent

The rules relating to which party has the onus of proving a valid waiver of counsel are also well established. Where the record is silent and does not show that the accused was offered the assistance of counsel and declined counsel after an appropriate inquiry by the trial court, the burden of proving an intelligent waiver is on the government.[9] Conversely, when the record indicates that the accused was offered counsel but declined the offer, he has the burden of showing that his declination was not knowingly and intelligently made.[10] In the instant case no transcript exists of the 1961 proceedings at which appellant waived counsel and pleaded guilty. The only evidence as to the advice given appellant is the transcript of the hearing in 1963. It is unnecessary for this court to decide which of the two rules governing the burden of proof is applicable in this case because regardless of on whom the burden rests the determination of the validity of appellant's waiver of counsel depends largely on what was said to him by Judge Mook and what he understood the advice to mean. In determining the credibility of appellant's contention that he understood that he would have to pay for counsel even though court appointed, it was essential that he be given a hearing to enable him to demonstrate the truthfulness of his assertion. The court before whom appellant could testify would have the opportunity to evaluate his demeanor and fully explore the merit of his contention.

Although appellant was afforded a hearing in the state court on his habeas corpus petition, the utility of that hearing was lost by the death of Judge Mook who had heard appellant testify but had not yet ruled upon his petition. That Judge Cherry reviewed the transcript almost a year after the date of the hearing does not satisfy the requirements of a full and fair hearing. In Judge Cherry's opinion, dated October 8, 1964, he stated: "The record is replete with accusatory statements of the prisoner, made without any foundation, and which carry with them no believability." Since Judge Cherry had not heard appellant testify, his conclusion regarding appellant's credibility, resting solely on his reading of the transcript need not be given the same effect by a reviewing court as a determination of credibility made by a trier of fact who has had the opportunity to observe and hear the witness.[11]

In Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the Supreme Court held that a federal court *must* grant an evidentiary hearing to a habeas applicant when the fact-finding procedure employed by the state was not adequate to afford a full and fair hearing. The Court stated:

"Even where the procedure employed [by the state court] does not violate the Constitution, if it appears to be seriously inadequate for the ascertainment of the truth, it is the federal judge's duty to disregard the state findings and take evidence anew." (at 316, 83 S.Ct. at 759)

In the circumstances of this case, appellant's contention rested largely on whether the habeas corpus court would believe his assertion concerning his understand-

criminal defendants of the right to the assistance of counsel free of charge, stating: "So that the accused may fully understand his rights, it is desirable that he be informed that court assigned counsel will be made available to him without fee or charge. See Pa.R.Crim.P. 318A (adopted June 30, 1964)." 415 Pa. at 526 n. 14, 204 A.2d at 444.

The teaching of *O'Lock*, however, was announced long after the proceedings here under review.

9. Carnley v. Cochran, 369 U.S. 506, 82 S. Ct. 884, 8 L.Ed.2d 70 (1962); United States ex rel. Wright v. Myers, 265 F. Supp. 483 (E.D.Pa.1967); Commonwealth ex rel. Wright v. Cavell, 422 Pa. 253, 220 A.2d (1966); Commonwealth ex rel. O'Lock v. Rundle, supra note 5.

10. Carnley v. Cochran, supra note 9; Moore v. Michigan, supra note 6; Commonwealth ex rel. Wright v. Cavell, supra note 9; Commonwealth ex rel. McCray v. Rundle, supra note 5.

11. F. W. Stock & Sons v. Thompson, 194 F.2d 493, 495–496 (6 Cir. 1952).

ing of the effect of appointment of counsel. It was essential for the court ruling on his petition to hear him and observe his demeanor. The United States District Court relied entirely on Judge Cherry's vicarious determination. It should have granted appellant a new evidentiary hearing. Failing to do so, it erred. In so holding we intimate no directive as to how the District Court may choose to rule after it has heard appellant and any other relevant evidence that may be brought forward.

The order of the District Court denying the petition for habeas corpus will be reversed and the case will be remanded to the District Court for the purpose of conducting a hearing to determine whether appellant intelligently and understandingly waived his right to counsel and whether he validly entered guilty pleas.