**Carl R. CHASE, Petitioner, Appellant,**

**v.**

**Allan L. ROBBINS, Warden, Maine State Prison, Respondent, Appellee.**

**No. 7250.**

United States Court of Appeals
First Circuit.

April 16, 1969.

---

---

Pierce B. Hasler, Portland, Me., by appointment by the Court, for appellant.

John W. Benoit, Jr., Asst. Atty. Gen., for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Petitioner Carl R. Chase is serving a life sentence resulting from a 1952 murder conviction in Maine. This Habeas Corpus petition, denied in the district court, is but the latest in a seemingly endless series of challenges to the convic-

tion that petitioner has asserted in the intervening years.

We, unlike the district court, are confronted with the resolution of only one issue, namely, whether the petitioner was without counsel at his arraignment in 1952.[1] Petitioner contends that the rather brief and cryptic record of the arraignment tends to support his position that he did not have counsel and that the testimony from the 1960 Coram Nobis hearing and the 1966 Habeas Corpus hearing in the Maine Superior Court is entirely inconclusive. He concludes that he has thus met any burden he had and that the writ should issue.

An examination of the record, especially the above noted portions, does not support these contentions. The record of the arraignment contains merely the following:

"State v. CARL R. CHASE (murder) 1952, Sept. T.    A. Alan Grossman 1952; Nov t 5: Capias issued. 6 Respondent arraigned and pleaded not guilty. Court appointed A. Alan Grossman counsel for respondent. Respondent remanded to await trial. 21, opened to drawn jury, with James Whiting appointed foreman."

At Coram Nobis (1960) petitioner testified that he did not know that the court had appointed Grossman, the lawyer who defended him at the trial, until Grossman visited him while in jail some time after arraignment; that he did not know whether he had "counsel" with Grossman before arraignment;[2] that he "under-

---

1. There is also the question whether arraignment in Maine at that time was a "critical stage" within the meaning of Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961). But Nadeau v. State, 232 A.2d 82 (Me.1967) answers this question clearly in the affirmative.

2. The government stresses the following colloquy:

    Q. "Well, prior to your arraignment did you have counsel with Mr. Grossman?"

    A. "I believe Mr. Grossman came into the county jail at the request of the Court for a few minutes as I was being brought up stairs."

The effect of this seeming admission is dissipated by the sentence immediately following, however. "Whether that was the same day or the day after I don't recall."

Confusion is redoubled when shortly thereafter we read:

    Q. "You saw him [Grossman] before he was appointed?"

    A. "I don't rightly recall. I might have seen him a very few minutes before. I think he did come into my cell at the county jail for approximately five minutes."

stood" Grossman was present in the courtroom during arraignment. At Habeas Corpus (1966) Chase again said that he did not learn about Grossman's appointment until after arraignment; that he had not conferred with counsel before being brought up to be arraigned.[3]

At Coram Nobis Grossman testified that he was "not sure" whether he talked to petitioner prior to the time that he entered his plea but was present in the courtroom at the arraignment. At Habeas Corpus, however, six years later, Grossman testified that as he remembered it he conferred with Chase in jail before arraignment; had a chance to study the indictment and to decide whether he was ready for arraignment that day.

We turn now to petitioner's contention that the record of the arraignment must be presumed to be chronological and thus supports his position that he was without counsel at that time. In the first place, the court clerk who transcribed this brief record of the arraignment testified at Habeas Corpus that he did not even know whether he was present at the arraignment and that in any event, the record was not necessarily chronological within a given term day.[4]

A further difficulty with petitioner's theory is his own testimony. Both at Coram Nobis and at Habeas Corpus petitioner was emphatic that he did not learn about the appointment of Grossman until he was back in his cell after arraignment. But the same record that lists appointment of counsel after plea and arraign-

ment on the sixth day of the term also lists "Respondent (Chase) remanded to await trial" for the same day. If the order of the record is chronological, then just as the appointment of counsel must have been after arraignment, so the remand for trial must have been after appointment of counsel. But if this is true then petitioner must still have been present when Grossman was appointed to defend him. This flies in the face of petitioner's own very definite assertions both at Coram Nobis and at Habeas Corpus.

We conclude then that the brief record of the arraignment is not authority for the proposition that petitioner lacked counsel at this stage. This in no way impeaches the record, see *Hamilton, supra,* 368 U.S. at 53, 82 S.Ct. 157, because the record did not purport to be chronological.

Petitioner does not regard this conclusion as fatal to him. He contends that the record, if it does not support him, is at least neutral on this issue and there is no reason why he should suffer from the state's deficiency in keeping a record. But here in addition to the trial record, we have extensive testimony in the post-trial hearings that supports the district court's finding that the petitioner was not denied his right to counsel. See *Baez v. Rodriguez,* 381 F.2d 35 (10th Cir. 1967). The testimony reveals that Attorney Grossman was in the courtroom at the time of arraignment and that he had no reason to be in Auburn apart from this case.[5] We are not willing to conclude from this that the district court

3. But later on in his testimony petitioner hedges somewhat on this.
   Q. "Is it your testimony today that before your arraignment Mr. Grossman didn't see you at the County Jail?"
   A. "I don't recall exactly clearly, but he could have popped his head in the door and said, 'I have called Boston. I will see you in a few minutes.'"

4. "1952, Nov. T 5 ...... 6 ...... 21" refers not to November 5, 6 and 21 but to the fifth, sixth and twenty-first days of the November term. The order is never-

theless chronological to that extent. Within a given term day, however, according to the clerk, it is not necessarily chronological.
   The clerk was also asked whether it was his custom to record events chronologically but the court did not allow this question.

5. Petitioner originally wanted not Alan Grossman, who actually defended him, but Israel Grossman, his brother, a Massachusetts lawyer. The authorities holding petitioner in custody telephoned Alan Grossman with the idea that he would contact his brother in Boston. In

erred, especially in view of Grossman's testimony that he not only was present at the arraignment but had had adequate time to prepare, testimony which was not contradicted with any consistency by petitioner.

Cases cited by petitioner do not persuade us. In Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962) there was no disputed fact question. Id. at 516. Moreover, that case merely held that waiver of right to counsel will not be inferred from a silent record. As stated in United States ex rel. Gordon v. Myers, 265 F.Supp. 664, 665 (E.D.Pa.1966), aff'd, 371 F.2d 540 (3d Cir. 1967), "The real question here is not whether the relator intelligently waived counsel and pleaded guilty, but, whether he was, *in fact, represented by counsel.* On this objective factual issue the relator has the burden of establishing the validity of his claim." (emphasis in original.)

In Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), a record of prior convictions was introduced in the trial court. This record stated flatly that the defendant was without counsel. Later the prosecution introduced a second version of the conviction which did not say at all whether the defendant had counsel but which referred to argument of counsel without specifying whether this was intended in a singular or plural sense. This is surely distinguishable from our case. Once there was a flat assertion that defendant was without counsel, this could not be rebutted by a second version that was merely neutral on the question, especially with no explanation of any discrepancy. This did not even qualify as a "silent record."

Browning v. Crouse, 356 F.2d 178 (10th Cir.), cert. denied, 384 U.S. 973, 86 S.Ct. 1864, 16 L.Ed.2d 683 (1966) also involved the question of waiver as distinguished from the fact of counsel. Moreover, the crux of that case was the statement that "[w]hen a record fails to show affirmatively that the required safeguards are provided, their existence may not be inferred from a general statement of a practice," id. at 180. There would be a valid analogy to this case if the government here contended not that petitioner had counsel at arraignment but merely that it was customary to have counsel at arraignment. Similarly, in Harris v. Boles,[6] 349 F.2d 607 (4th Cir. 1965), the record on appeal contained only the defendant's testimony that no counsel was present in his behalf.

■ But counsel means effective counsel, see Powell v. Alabama, 287 U. S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158 (1932), and it is petitioner's final position that even assuming that he had counsel at arraignment, it was such a last minute thing that the attorney could not possibly have been prepared to offer worthwhile assistance. We note in the first place that petitioner does not seem to have raised this aspect of the problem either in the district court or in the state courts. In view of the fact that he has been so unbashful about presenting his complaints in diverse forms with myriad detail, we think it singularly inopportune that he raise issues now that were not previously raised. In any event, even this position lacks substantial merit. Cases such as Fields v. Peyton, 375 F. 2d 624 (4th Cir. 1967) involving not arraignment but the actual trial are called to our attention. In *Fields* the defendant found himself sentenced to six years in prison within fifteen or thirty minutes after appointment of counsel.[7] While the principle that as-

the end the court appointed Alan Grossman to defend petitioner. Whether this was because as a Maine attorney he was more familiar with the local practice or simply because he was the Grossman who in fact showed up is not entirely clear.

6. Both *Browning* and *Boles*, like *Burgett*, involved the question not of counsel at the immediate trial but in a prior conviction, the record of which was sought to be introduced pursuant to a repeat offender statute.

7. See United States ex rel. Mathis v. Rundle, 394 F.2d 748 (3d Cir. 1968) where the court after announcing a standard very favorable to the petitioner, id. at

sistance of counsel should be effective is equally applicable here, it is difficult to believe that such a case is really pertinent. Typically, the trial of a serious felony should involve a certain amount of detailed consultation and investigation. It is more difficult to generalize about the arraignment. This is a critical stage but the time an attorney needs to prepare for it is not necessarily proportionate to its criticality. Attorney Grossman testified that he had time to prepare. In any event perhaps little time was needed at that stage and if in the opinion of counsel it was otherwise, he could have easily applied to the court for a continuance.

Affirmed.

753, concluded that appointment of counsel to represent petitioner on the night before trial did not amount to a denial of effective assistance of counsel.