Thomas Patrick SCHRAM, Appellant,

v.

Hoyt C. CUPP, Warden, Oregon State Penitentiary, Appellee.

No. 24077.

United States Court of Appeals, Ninth Circuit.

April 17, 1970.

Jack B. Schwartz (argued), Portland, Or., for appellant.

Thomas H. Denney (argued), Asst. Atty. Gen., David H. Blunt, Asst. Atty. Gen., Lee Johnson, Atty. Gen., State of Oregon, Portland, Or., for appellee.

Before BARNES, ELY and HUF-STEDLER, Circuit Judges.

HUFSTEDLER, Circuit Judge:

Schram appeals from an order of the District Court dismissing, without an evidentiary hearing, his petition for federal habeas relief from an Oregon judgment. (28 U.S.C. §§ 2241–2254.) He had exhausted his state remedies before he filed his petition for federal relief.[1]

At issue is the constitutional validity of two prior convictions relied upon by an Oregon court to increase the penalty upon his last conviction from three years to twenty years under the provisions of Oregon's habitual offender statute. (Ore.Rev.Stat. § 168.015 *et seq.*)

Schram's Oregon convictions began in 1946, when he pleaded guilty to one count of an information charging him with obtaining $20 by false pretenses. In 1948, he was convicted upon two counts of unarmed robbery following his plea of guilty to each count. In 1952, he was convicted upon one count of un-armed robbery to which he had entered a guilty plea. Finally, in 1964, he was convicted upon one count of an information charging him with burglary not of a dwelling, for which he was initially sentenced to an indeterminate three-year term in the penitentiary. Thereafter, Oregon instituted recidivist proceedings charging him with felony convictions in 1946, 1948, and 1952. The court found that Schram had three convictions prior to his 1964 conviction, vacated the three-year sentence upon his 1964 conviction, and imposed the twenty-year sentence that Schram is presently serving.

Schram then sought postconviction relief in a state court in Oregon challenging the validity of the 1946 and 1952 convictions on the grounds that he had not been represented by counsel and had not knowingly and intelligently waived counsel on either occasion and that he had not voluntarily entered the guilty pleas. An evidentiary hearing was held on his petition. Schram was the sole witness. The judge, who took Schram's pleas and sentenced him in 1946 and 1952, had died before the hearing. The court reporter was also dead. The contemporaneous record of both the 1946 and 1952 proceedings was limited to the judgment rolls.

The judgment roll of the 1946 conviction reveals only that Schram expressed a desire for counsel. It is barren of any indication that Schram was given or had waived counsel. Schram testified that no one told him in 1946 that he had a

---

1. The Supreme Court of Oregon affirmed the denial of his petition for postconvic-tion relief in Schram v. Gladden (1968) 250 Or. 603, 444 P.2d 6.

right to be represented by an attorney at public expense or otherwise, and that he did not know about that right. Schram was indigent.

The judgment roll of the 1952 conviction contains a document entitled "Waiver, Arraignment and Plea." It recites: "The defendant having been advised by the Court of his right to be represented by counsel, and the defendant having stated that he did not desire counsel * * * the Information was read by the District Attorney under the direction of the Court * * * and * * * defendant pleaded guilty thereto." Nothing in the judgment roll indicated that Schram was advised specifically that he had a right to counsel at public expense. At his state evidentiary hearing, Schram testified that he was not so advised and that he did not know his right. He knew he was entitled to a lawyer if he could hire one, but neither he nor his family had the financial means to do so. He testified that no one told him about the elements of the offense, the possible defenses, or the maximum punishment for the 1952 offense. He further testified that neither his lawyer in the 1948 case nor anyone else had told him any of those things. There was no contrary evidence.

The Oregon court found the following facts: In 1946, when Schram was 23 years old, he was charged with obtaining money by false pretenses. He "was advised of his right to counsel, but he was not informed that he could have an attorney at public expense if he was without funds. The court record is incomplete and ambiguous as to defendant's expressed wish concerning counsel. * * * The petitioner discussed the charge against him with the Klamath County Sheriff who told him he ought to plead guilty, because he would probably get only a little jail time and probation. A few days later, the petitioner again appeared in court without counsel and freely and voluntarily plead guilty to the crime of obtaining money by false pretenses. * * * He knew the consequences and meaning of pleading guilty and he knew the facts from which the charge against him arose. No one had explained to him, however, the technical aspects, possible defenses, or the elements of the crime. Petitioner hoped that since it was a first offense, the court would grant probation. Instead a sentence to the Oregon State Penitentiary for two years was imposed and ordered executed."

With respect to the 1952 conviction, the court found that he had no counsel. "No one informed the petitioner of the several elements of the crime of unarmed robbery, nor the possible defenses thereto, nor that the maximum penalty was fifteen years in prison. Mr. Schram did not inquire about the penalty for the crime nor about the elements or defenses nor did he ask for the appointment of counsel. He was advised of his right to counsel, but he was not specifically advised that he could have counsel at public expense. However, at that time, the petitioner was aware of his right to court appointed counsel. He had had such counsel in Multnomah County in 1948.[2] The petitioner voluntarily, understandingly and freely, without coercion or threats, waived his right to Grand Jury investigation."

The court concluded that Scram's 1952 conviction was "valid and legal," that "the court is convinced that in 1952, despite his testimony at the hearing to the contrary, Mr. Schram knew of his right to court appointed counsel, even if he was not so advised, which he probably was, and of his other rights, and he knew that a plea of guilty was a complete admission of the charge, and that all that remained was for the court to impose sentence." It expressed doubt about

2. The record of the 1948 trial showed that Schram had been represented by court appointed counsel at the time he was arraigned and pleaded not guilty, that private counsel had been retained by Schram's family and was substituted for court appointed counsel, and that Schram had thereafter pleaded guilty to the 1948 charge.

the validity of the 1946 conviction, but decided that it was unnecessary to determine the question because Schram was given the "minimum sentence allowed for three prior convictions," and he had not challenged the validity of the 1948 conviction.

On appeal from the order denying his petition for postconviction relief, the order was affirmed by a divided court. (Schram v. Gladden, *supra*, 444 P.2d 6 (4–3).) Both the majority and minority opinions recognized that Schram had no counsel in 1952 and that he had not been advised in 1952 of his right to counsel at public expense. The majority adopted the Oregon trial court's view that Schram had the burden of proving that he was unaware of his right to court appointed counsel and that the fact that he had had court appointed counsel in 1948 adequately evidence his awareness of that right in 1952. The failure to advise him of "the nature of the crime or the range of allowable punishment" was of no moment because "the crime to which he pleaded guilty in * * * 1952 is identical with the crimes he had pleaded guilty to in * * * 1948 when he was represented by counsel."

Mr. Justice Denecke, speaking for the dissenting justices, pointed out the absence of evidence that Schram had intelligently waived counsel and the deficiencies in the record to sustain the conclusion that he had understandingly pleaded guilty to the 1952 charge. He challenged the foundation of the majority's assumption that Schram had been effectively advised in 1948 by his former counsel, and he observed that even if the assumption were supported by the record, such four-year-old advice was not "a constitutional substitute for the kind of knowledge that must be imparted to any defendant before his guilty plea can be accepted." (444 P.2d at 9.)

The federal District Court received in evidence the record of the Oregon postconviction hearing. It conducted no evidentiary hearing of its own. The District Court found that the 1952 conviction was valid, declined to decide the va-

lidity of the 1946 conviction, and denied relief following the rationale of the majority of the Oregon Supreme Court. We reverse.

The duty of the federal habeas court is "to try the facts anew * * * in every case in which the state court has not after a full hearing reliably found the relevant facts." (Townsend v. Sain (1963) 372 U.S. 293, 318, 83 S.Ct. 745, 759, 9 L.Ed.2d 770; Fay v. Noia (1963) 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837; Sessions v. Wilson (9th Cir. 1966) 372 F.2d 366.)

██ The question whether a defendant has knowingly and intelligently waived counsel is a mixed question of fact and law. The Oregon trial court conducting the postconviction proceeding did not reliably find the relevant facts because it erroneously placed the burden on Schram in his postconviction proceedings to prove that he was unaware of his right to court appointed counsel and that he did not waive that right. The record of the 1952 conviction is silent in respect of any advice by anyone to Schram, an indigent, that he had a right to counsel supplied without cost to him. Knowledge of that right cannot be presumed from a silent record. Because the record is silent, the burden rested on Oregon, not Schram, to prove that he had been effectively advised of his right to court appointed counsel and that, in accordance with the standards of Johnson v. Zerbst (1938) 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, he had waived that right. (Carnley v. Cochran (1962) 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 270; Gideon v. Wainwright (1963) 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; Irving v. Breazeale (5th Cir. 1968) 400 F. 2d 231; cf. Watson v. Eyman (9th Cir. 1969) 419 F.2d 1375; Molignaro v. Smith (5th Cir. 1969) 408 F.2d 795; United States ex rel. Ackerman v. Russell (3d Cir. 1968) 388 F.2d 21.) On the record before the Oregon postconviction court, the State did not meet its burden.

██ The State had the further burden of showing that, despite the silence

of the records of the 1946 and 1952 convictions, Schram yielded his right to counsel with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishment thereunder, possible defenses to the charge and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. (Von Moltke v. Gillies (1948) 332 U.S. 708, 723–724, 68 S.Ct. 316, 92 L.Ed. 309; Sessions v. Wilson, *supra*, 372 F.2d 366.) The State also failed to carry that burden in the Oregon court, and that court's findings cannot withstand the test of Townsend v. Sain, *supra*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770.

Upon the face of the record presented to the District Court, including the transcript of his evidentiary hearing in Oregon, Schram was entitled to habeas relief: The 1946 and 1952 convictions were constitutionally invalid and neither could have been used to enhance punishment for his 1964 offense. (Burgett v. Texas (1967) 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319.) The result is that the 1948 offense could not be used to enhance the penalty for the 1964 offense. The Oregon recidivist statute forbids the use of a prior felony conviction for that purpose if the offender was "finally and unconditionally discharged from all resulting imprisonment, probation or parole more than seven years before the commission of the principal felony." (Ore.Rev.Stat. § 168.015(4) (c).) Schram's 1948 conviction expired for enhancement purposes not later than 1959 (a 4-year maximum term plus 7-year recidivist limitation).

The order dismissing Schram's habeas petition is reversed and the cause is remanded, with directions to grant the writ unless Oregon vacates Schram's conviction upon the habitual offender proceeding not later than 60 days from the date our mandate issues.

BARNES, Circuit Judge (dissenting).

I dissent. I am persuaded that the continuing vitality of Moore v. Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed. 2d 167 (1957) as recognized by Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962)—a case cited by the majority for its position—leaves the burden of proving inadequate waiver of counsel with the petitioner-appellant, and that he fails to meet that burden.

The *Carnley* Court specifically limited its holding in the following manner:

"Neither Bute v. Illinois, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986 nor Moore v. Michigan, *supra*, is in any way inconsistent with our holding and disposition here. * * * In *Moore,* the record showed clearly that the petitioner had *expressly declined an offer of counsel* by the trial judge, and we held that the accused had to show by a preponderance of the evidence that his acquiescence was not sufficiently understanding and intelligent to amount to an effective waiver. But no such burden can be imposed upon an accused unless the record—or a hearing, were required—reveals his affirmative acquiescence. * * *" 369 U.S. at 516–517, 82 S.Ct. at 890. (Emphasis added.)

The clear declination of an "offer of counsel" that was approved by the *Carnley* opinion was recounted as follows by the *Moore* Court:

"In accordance with the then prevailing procedure no stenographic transcript was taken of the proceedings in the Circuit Court at the time of the arraignment and plea. However, at the hearing held on the delayed motion for a new trial, two witnesses, who were present in the courtroom on October 29, 1938, testified as to what then transpired. On the basis of their testimony the Circuit Court in denying the motion for new trial found as a fact—which finding is, of course, accepted by us—that before the petitioner tendered the plea of guilty the trial judge asked the petitioner 'whether he had a lawyer and *whether he desired to have a lawyer* and that [the petitioner] gave a nega-

tive reply to both of these inquiries, and stated that he wanted to get the matter over with.' " 355 U.S. at 157–158, 78 S.Ct. at 193 (emphasis added).

There is a striking similarity between the language of offer and waiver in *Moore* and in the case before us. Specifically, the judgment roll for the 1952 conviction (Ex. 5) reads as follows:

" * * * and the defendant having been *advised* by the Court *of his right to be represented by counsel,* and the defendant having *stated* that he *did not desire* counsel; * * *." (Emphasis added.)

Both records speak to the *advice* as to right to counsel tendered by the trial judge and the lack of *desire* for counsel on the part of the criminal defendant. *Neither* record contains specific language regarding *compensation* of such counsel by the court. As such, both records are "silent" in the manner indicated in the majority opinion. The majority finds that this fact compels its holding that the burden must shift to the government on the waiver issue. In sharp contrast, however, the *Moore* Court, citing the landmark case of Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (quoted in relevant part in the margin),[1] was of the opinion that the record was sufficient to leave the burden upon the petitioner-appellant to show lack of intelligent waiver. I find the conclusion inescapable that a similar burden should be placed upon this appellant.

There are additional reasons for my reaching this conclusion. The subse-quent decision in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1962), which overruled Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), cannot be thought to alter the validity of the *Moore* holding, since the *Moore* Court specifically held that the defendant involved had the right to court-appointed counsel unless it had been intelligently waived. Thus, as evidenced by the following passage, Moore had the full panoply of *Gideon* rights.

"The principles determining the extent to which this constitutional right to counsel is secured in a state prosecution have been discussed in a long series of decisions of this Court. [footnote citing Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) and other cases omitted] We hold that the petitioner's case falls within that class in which the intervention of counsel, unless intelligently waived by the accused, is an essential element of a fair hearing." Moore v. Michigan, *supra*, 355 U.S. at 159, 78 S.Ct. at 194.

I can find no language in *Gideon* that alters the standard for determining intelligent waiver that was enunciated in Johnson v. Zerbst, *supra*, and applied in Moore v. Michigan, *supra*. Nor do any subsequent cases with which I am familiar alter the standard. From this I conclude that the "offer of counsel" in the case before us, which was essentially the same as the one in *Moore*, requires us to reach the same result as the *Moore* opinion on the burden of proof issue.[2]

Alternatively, it is my opinion that we could dispose of this case without a reso-

---

1. The Court in Johnson v. Zerbst spoke of the burden in collateral proceedings as follows:

    "It must be remembered, however, that a judgment cannot be lightly set aside by collateral attack, even on *habeas corpus*. When collaterally attacked, the judgment of a court carries with it a *presumption of regularity*. [footnote omitted] Where a defendant, without counsel, acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of *habeas corpus*, the *burden of proof rests upon him* to establish that he did not competently and intelligently waive his constitutional right to assistance of Counsel." 304 U.S. at 468–469, 58 S.Ct. at 1025. (emphasis added).

2. It should be noted in passing that the evidence of threats of violence and other intimidation of the defendant in *Moore* enabled him to fulfill the burden of establishing that he had not intelligently waived counsel. Such facts are not present in this case.

lution of the burden of proof issue for the same reasons the Third Circuit avoided decision of the issue in United States ex rel. Ackerman v. Russell, 388 F.2d 21 (3rd Cir. 1968), also cited by the majority. In that case the habeas petitioner admitted that he had been offered counsel but contended that he did not *know that the court would appoint one at no cost* to him. The other relevant facts are similar to those of the case before us. There was no transcript of the original proceeding and the only evidence of waiver of counsel was petitioner's signature on a form that was stamped on the back of the indictment reciting the charges against him. In addition, the state trial judge had died. The Third Circuit in discussing the application of rules governing burden of proof stated the following:

"The rules relating to which party has the onus of proving a valid waiver of counsel are also well established. Where the record is silent and does not show that the accused was offered the assistance of counsel and declined counsel after an appropriate inquiry by the trial court, the burden of proving an intelligent waiver is on the government. [footnote citing *Carnley, supra*] Conversely, when the record indicates that the accused was offered counsel but declined the offer, he has the burden of showing that his declination was not knowingly and intelligently made. [footnote citing *Carnley* and *Moore, supra*] in the instant case no transcript exists of the 1961 proceedings at which appellant waived counsel and pleaded guilty. The only evidence as to the advice given appellant is the transcript of the [habeas] hearing in 1963. *It is unnecessary for this court to decide which of the two rules governing the burden of proof is applicable in this case because regardless of on whom the*

*burden proof rests the determination of the validity of appellant's waiver of counsel depends largely on what was said to him by Judge Mook and what he understood the advice to mean.* In determining the credibility of appellant's contention that he understood that he would have to pay for counsel even though court appointed, it was essential that he be given a hearing to enable him to demonstrate the truthfulness of his assertion. The court before whom appellant could testify would have the opportunity to evaluate his demeanor and fully explore the merit of his contention." 388 F.2d at 24 (emphasis added).

I am convinced that the case before us is essentially indistinguishable from *Russell*,[3] *supra*. I believe that the issue of waiver should be decided on the basis of this defendant's credibility and the totality of circumstances surrounding his waiver. I would affirm the findings of the trial judge who carefully considered all the relevant factors.

If the issue of burden of proof must be met head-on, I think that the Ninth Circuit case of Beasley v. Wilson, 370 F.2d 320 (9th Cir. 1966) deserves some mention; its facts and holding are relevant to the case before us. The documentary evidence of waiver of counsel in the state court proceeding was as follows:

"[T]he transcript of the preliminary hearing where appellant had been *advised of his right* to counsel and had *stated that he did not desire counsel* and which also showed that the appellant at that time admitted in detail the commission of the crime was submitted." 370 F.2d at 322 (emphasis added).

The opinion goes on to discuss the requirements of *Gideon, Moore* and *Carnley* and concludes that the burden was

---

3. I find it insignificant that the defendant in *Russell* acknowledged that he had been offered counsel since the contested issue in that case and in ours is whether the defendant was sufficiently made aware that the court would *pay for* counsel. Both our case and *Russell* deal with records that are, in the words of the majority, "silent" as to payment of appointed counsel by the court.

upon the *habeas petitioner* to establish that he did not intelligently waive counsel. Specifically, the panel said:

"We are mindful of the requirement stated in Carnley v. Cochran [citations omitted], that 'the record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.' However, our examination of the evidence presented amply supports the finding and order of the district court." 370 F.2d at 322–323.

I think the *Beasley* approach to the burden of proof and determination of waiver from all the evidence and circumstances to be sound, and I think it would be unwise to alter it so as to make it inconsistent with *Moore* and *Carnley*, *supra*; both of which the Supreme Court has yet to modify in the manner it has modified the related requirements surrounding acceptances of pleas of guilty. See Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *cf.* McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). Moreover, I am convinced that even if the Supreme Court did alter the standards governing waiver of counsel such a holding would be restricted to prospective application such as was accorded to *McCarthy, supra* in Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969).

In conclusion, I think it worth mentioning that the issues in the case before us bring into sharp relief some of the practical difficulties brought about by recent Supreme Court cases reinterpreting the constitutional guarantees of the Bill of Rights as applied through the Fourteenth Amendment. These difficulties are minimized by considering the contested state proceedings in light of all the relevant circumstances to deter-

mine whether fundamental rights subsequently recognized have been denied.[4] Such a flexible standard of review does no injustice to the criminal defendant in the context of the specific factual and legal questions of this case, and I can see no useful purpose to be served by adopting the formalistic requirement that the majority holding fastens upon state proceedings of an earlier era. Thus in view of *Moore, Carnley* and our own holding in *Beasley*, I would place the burden upon the petitioner to establish lack of intelligent waiver of his right to court-appointed counsel. The trial judge, after viewing the totality of circumstances of the case, found that this burden has not been met. I cannot characterize his evidentiary determination as clearly erroneous, and, therefore, I would affirm.

---

4. The question of whether or not retroactivity should be accorded to recent Supreme Court decisions has raised many of the same problems. *See, e. g.,* the di-

vergent opinions in our recent decision of United States v. Scott, 425 F.2d 55, decided March 6, 1970 *en banc.*