Harold L. McGHEE, Petitioner,

v.

Maurice H. SIGLER, Warden of Nebraska Penal & Correctional Complex, Respondent.

Civ. No. 1571 L.

United States District Court, D. Nebraska.

June 3, 1971.

William A. Harding, Lincoln, Neb., for petitioner.

Harold Mosher, Asst. Atty. Gen., for respondent.

## MEMORANDUM OF DECISION

URBOM, District Judge.

The habeas applicant, Harold L. McGhee, is presently incarcerated in the Nebraska Penal and Correctional Complex. On January 15, 1968, he was found guilty by a jury on three separate counts of assaulting a police officer. Following the one-day trial the district court conducted a hearing on a fourth count which charged the petitioner with being a habitual criminal and at the conclusion of that hearing found the petitioner to be a habitual criminal. On February 1, 1968, the district court sentenced the petitioner to ten years on each of the three counts, the sentences to run concurrently. A timely appeal was effected to the Supreme Court of Nebraska and in State v. McGhee, 184 Neb. 352, 167 N.W.2d 765 (1969) the conviction and sentence were affirmed.

Suit was commenced in federal court on August 1, 1969, with an order pursuant to 28 U.S.C.A. § 1915 permitting the petitioner's application for writ of habeas corpus to be filed without prepayment of costs, and counsel was appointed. Two hearings have been held to aid the resolution of two tangential issues: (1) whether state remedies had been exhausted, see McGhee v. Sigler, Civ. 1571 L (unreported memorandum July 20, 1970); and (2) whether certain state procedural requirements had been deliberately by-passed, see McGhee v. Sigler, Civ. 1571 L (unreported memorandum March 24, 1971). No further evidence as to the merits of the petitioner's allegations has been adduced, both parties have submitted briefs, and the case has been submitted for decision.

The petitioner has presented six issues:

1. Whether the testimony of the night marshal, Officer Miller, concerning certain oral admissions made by the petitioner during a custodial interrogation should have been excluded under Miranda v. Arizona, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966);

2. Assuming that these oral admissions should have been excluded under *Miranda*, whether introducing them into evidence constituted harmless error beyond a reasonable doubt;

3. Whether the petitioner properly could be convicted of assault with a deadly or dangerous weapon, if the weapon was in fact unloaded;

4. Whether the petitioner's conviction for assault with a deadly weapon was supported by the evidence;

5. Whether the petitioner's 1952 conviction in the District Court of Lancaster County, Nebraska, was valid for purposes of enhancement under the Nebraska Habitual Criminal Act, R.R.S. § 29–2221 (1969 Cum.Supp.); and

6. Whether the petitioner's 1960 conviction in the District Court of Pocahontas County, Iowa, was valid for purposes of enhancement under the Nebraska Habitual Criminal Act, supra.

## FINDINGS OF FACT

On August 20, 1967, the petitioner was an occupant of an automobile which was being operated by a woman companion. Two Inglewood, Nebraska, police officers initiated pursuit of the automobile, after seeing that the driver had failed to stop at a stop sign. The police followed the fleeing automobile to a private residence, pulled their cruiser into an adjacent alley, and stopped to question the driver. Before the police could get out of their car, the petitioner approached them with a rifle, shouted, "I am going to kill everyone of you," and shoved the barrel of the rifle into the open window of the cruiser on Officer Miller's side. A struggle ensued between Miller and McGhee for possession of the rifle, while Miller's partner radioed the Fremont, Nebraska, police for assistance. Before the Fremont police arrived, McGhee dislodged the barrel of the rifle from Miller's grasp and fled with it back into the house. When the Fremont police did arrive,

force was required to arrest the petitioner, who resisted by biting and kicking the officers.

After the petitioner was arrested, he was transported to the police station. At the police station he was questioned by Miller as to whether the rifle had been loaded, telling the petitioner that he did not have to answer if he did not want to. McGhee admitted the rifle had been loaded. That admission was subsequently introduced against the petitioner by the prosecutor during the state's case-in-chief at the trial.

As a result of the August 20th incident, the petitioner was charged with three counts of assaulting a police officer, but only one, assaulting an officer with a deadly or dangerous weapon, is a subject of the present action. The state district court on three separate occasions appointed counsel to represent the petitioner, and each time the petitioner became dissatisfied with his court-appointed counsel and successfully petitioned the court to relieve counsel from the case. Ultimately, the petitioner proceeded to trial *propria persona.*

## THE 1968 NEBRASKA CONVICTION

The respondent contends that the oral admission made by the petitioner that the rifle was loaded was a voluntary statement and, therefore, *Miranda* does not apply. Moreover, the respondent contends that *Miranda* is inapplicable because the oral admission was neither exculpatory nor inculpatory because under Nebraska law a person may be convicted for assault with a deadly or dangerous weapon without reference to whether the gun was loaded, if the person assaulted did not know at the time of the assault that the gun was not loaded.

An examination of the evidence demonstrates that the oral admission by the petitioner occurred during a custodial interrogation, was not volunteered but was made in response to a question by a police officer, and that the questioning officer before asking the

question did not advise the petitioner of his constitutional right to remain silent. Under the exclusionary rule of *Miranda* this admission should not have been admitted into evidence. In addition, the fact that the prosecutor was not required under Nebraska law to prove that the rifle was loaded does not obviate the application of *Miranda*.

■ Not every technical violation of the *Miranda* rule is sufficient to justify invalidation of a conviction. See United States v. Jackson, 429 F.2d 1368 (C.A. 7th Cir. 1970) (opinion by Clark, Associate Justice, retired); United States v. Sutt, 415 F.2d 1305 (C.A.7th Cir. 1969); United States v. Smith, 418 F.2d 223 (C.A.6th Cir. 1969); United States v. Johnson, 426 F.2d 1112 (C.A.7th Cir. 1970); Whitsell v. Perini, 419 F.2d 95 (C.A.6th Cir. 1969).

There is not a scintilla of evidence in the present case to support an allegation that the oral admission was induced or the product of improper threats, promises, harassment or misrepresentation. The violation of the *Miranda* rule was merely technical in nature. The direct testimony of the two Inglewood police officers convinces this court beyond a reasonable doubt that if the oral admission had been excluded the jury still would have rendered the same verdict of guilty. See Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) and Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). To abandon the harmless error rule in this case would allow the petitioner to render nugatory a state conviction which is grounded upon overwhelming evidence of guilt and would foster a talismanic interpretation of *Miranda* not justifiable to preserve the salutary principle of that case.

■ As to 3, the petitioner seeks to involve this habeas court in the substantive criminal law of Nebraska. Federal habeas jurisdiction is limited to ensuring that the state in the enforcement of its criminal law fully accords state criminal defendants their federal constitutional rights. To inject a habeas court into the substantive law upon which the conviction rests would injure the delicate relationship between federal and state governments. In Kauffman et al. v. Sigler, Civ. 1548 L (unreported memorandum January 14, 1971), this court declared:

"* * * Matters of substantive criminal law are entrusted to the prerogative of the legislature. It is within the legislative chambers that questions concerning whether a law is good or bad, fair or unfair, austere or lax must be resolved. * * *"

■ As to 4, the petitioner contends that the evidence is insufficient. I thoroughly disagree. To raise a constitutional issue the evidence must be totally devoid of value. Such is not the case here.

## THE 1952 NEBRASKA CONVICTION

In October of 1952 the petitioner, then 18 years old, was charged with car theft in the District Court of Lancaster County, Nebraska. An information charging the offense was filed on October 29 and the petitioner on the same day pleaded guilty; two days later he was sentenced to a term of 1 to 3 years in the Nebraska State Reformatory. Apparently this was the petitioner's first felony conviction. The question arising from the 1952 conviction is not whether the defendant was in fact represented by counsel, Chase v. Robbins, 408 F.2d 1350 (C.A.1st Cir. 1969), cert. denied 396 U.S. 967, 90 S.Ct. 446, 24 L.Ed.2d 432; United States ex rel. Gordon v. Myers, 265 F.Supp. 664 (U.S.D.C. E.D.Pa.1966), aff'd 371 F.2d 540 (C.A.3rd Cir. 1967); Losieau v. Sigler, 406 F.2d 795 (C.A.8th Cir. 1969), but rather whether the defendant knowingly and understandingly waived his right to counsel. Lepiscopo v. United States, 426 F.2d 769 (C.A.3rd Cir. 1970); Losieau v. Sigler, supra; Nielsen v. Turner, 287 F. Supp. 116 (U.S.D.C. Utah 1968); Lovato v. Cox, 344 F.2d 916 (C.A.10th Cir. 1965); Irving v. Breazeale, 400 F.2d 231 (C.A.5th Cir. 1968); Schram v. Cupp, 425 F.2d 612 (C.A.9th Cir. 1970); Meller v. Swenson, 309 F.Supp. 519 (U.S.

D.C. W.D.Mo.1969), aff'd Meller v. State of Missouri, 431 F.2d 120 (C.A.8th Cir. 1970).

The issue of waiver of the right to counsel pivots on who has the burden of proof, and whether that burden has been met. Unfortunately, the resolution of these issues factually cannot be made from the state court reporter's notes, because they have been lost.[1] That only record from the 1952 proceeding bearing on the issue of waiver of right to counsel is a docket entry which noted that the right had been waived along with several other rights. Moreover, the district court judge involved in the 1952 proceedings has died.[2]

■ Moore v. Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957) and Carnley v. Cochran, 369 U.S. 506, 82 S. Ct. 884, 8 L.Ed.2d 70 (1962) have set the burden of proof. From them we learn that if a right to counsel exists in the circumstances and if there was acquiescence by the defendant in the trial court's not appointing counsel, the burden then becomes the defendant's to show in a subsequent habeas corpus proceeding that the acquiescence was not intelligently and understandingly made. The court in Moore v. Michigan said:

"This Court held in Johnson v. Zerbst [304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461] supra, that when a judgment of conviction entered in the federal court is collaterally attacked upon the ground that the defendant did not have the benefit of counsel, he has the burden of showing, by a preponderance of the evidence, that he did not have counsel and did not competently and intelligently waive his constitutional right

to the assistance of counsel. * * * We * * * hold the rule of Johnson v. Zerbst applies in this case and that the petitioner had the burden of showing, by a preponderance of the evidence, that he did not intelligently and understandingly waive his right to counsel."

In Carnley v. Cochran, supra, the court in referring to Moore v. Michigan said:

" * * * In *Moore* the record showed clearly that the petitioner had expressly declined an offer of counsel by the trial judge, and we held that the accused had to show by a preponderance of the evidence that his acquiescence was not sufficiently understanding and intelligent to amount to an effective waiver. But no such burden can be imposed upon an accused unless the record—or a hearing, where required—reveals his affirmative acquiescence. Where, as in this case, the constitutional infirmity of trial without counsel is manifest, and there is not even an allegation, much less a showing, of affirmative waiver, the accused is entitled to relief from his unconstitutional conviction."

■■ It is true that waiver cannot be presumed from a silent record. Carnley v. Cochran, supra. But acquiescence to proceeding without counsel can be inferred from the record in the present case, which is not a silent record. The records of the district court of Nebraska state that on October 29, 1952, the defendant, Harold McGhee, appeared before the Honorable John L. Polk and in open court waived his right of counsel.[3] That record is sufficient to constitute an acquiescence and the burden therefore is

---

1. Stipulation No. 2, filing No. 19.

2. Stipulation No. 2, filing No. 19.

3. Stipulation No. 1, filing No. 18, docket entry from arraignment:
   "Now on this day comes the County Attorney on behalf of the State of Nebraska, and the defendant present in court in person and after waiving preliminary hearing, service of copy of information, twenty-four hours in which

to plead and right of counsel, said defendant standing at the bar of this court, in open court, is duly arraigned upon the information filed herein; and said information having been read to him he is duly inquired of by the Court whether he is guilty or not guilty of the offense charged against him in said information and said defendant for his answer thereto saith he is 'Guilty.' "

upon the petitioner here to show that that acquiescence was not intelligently and understandingly made.

■ I conclude that the petitioner here has not sustained his burden of proof. The entire evidence by the petitioner at the evidentiary hearing before this court is as follows:

"Q. What is wrong with that 1952 conviction in your estimation or belief?

A. Well now, after I have been told, we didn't have no attorney, and they asked us if we wanted to plead guilty to the charge—and there was two of us involved in this thing—and the other fellow said he would plead guilty to the charge; and I told him it was all my fault, and that I would plead guilty to the charge, and let one of us go, if it was possible; and it didn't work out that way; and so we went over before the judge and entered our plea and got sentenced at the same time, if I remember correctly. I don't know for sure—but that is pretty near the way it went.

Q. Did you want an attorney at that time?

A. Well, I didn't know nothing about it. I just—I didn't—

Q. You are not answering my question though.

A. I was only—

Q. Did you want an attorney at that time in 1952? Could you tell the judge you wanted an attorney?

A. No.

Q. Did you want an attorney in 1952 on that conviction?

A. I don't know whether I did or not. I would have to say no to that.

THE COURT: Mr. McGhee, let me review this with you. You do not have to say no unless that is the truth. If your answer is you don't know, and you want to stand by that, you do not need to say no, unless you did not want an attorney. State it the best way you can, as accurately as you can —that is all.

A. 'I don't know' would be the better answer."

■ That the petitioner does not know whether he wanted counsel does not contradict the court record that he waived counsel. Even if it be assumed that the court record of waiver does not carry with it an inference that he was informed that he was entitled to counsel at state expense if he were indigent, the fact remains that he has not shown in this court that at the time of the 1952 proceedings he in fact was indigent. Thus, he has not even shown that he had a right to appointment of counsel at state expense. The initial burden is upon the petitioner to show the existence of the right; on that showing the burden then would shift to the state to show a waiver in the form of an acquiescence; and upon that showing by the state the burden then would shift back to the petitioner to show that the acquiescence was not understandingly and intelligently made. Since the petitioner has not met the initial burden as to his right to appointment at state expense, no burden evolved upon the state to show an acquiescence.

This case is to be distinguished from Schram v. Cupp, 425 F.2d 612 (C.A.9th Cir. 1970), wherein the court said:

"The judgment roll of the 1946 conviction reveals only that Schram expressed a desire for counsel. It is barren of any indication that Schram was given or had waived counsel. Schram testified that no one told him in 1946 that he had a right to be represented by an attorney at public expense or otherwise, and that he did not know about that right. Schram was indigent."

In the present case the petitioner made, as far as the record shows, no expression for a desire for counsel. The court record says that he waived counsel. The petitioner did not testify that he had not been told in 1952 that he had a right to be represented by an attorney at public expense or otherwise or that he did not know about that right. The petitioner

did not state to this court or otherwise that in 1952 he was indigent.

The 1952 conviction properly was used as a basis for enhancement of the penalty for the 1968 conviction.

## THE 1960 IOWA CONVICTION

In August of 1960 the petitioner was charged in the District Court of Pocahontas County, Iowa, with the rape of a sixteen-year-old girl. After a plea of guilty was entered and accepted, the court imposed a fifteen-year sentence. The pleadings, briefs and evidence, consisting of only the Iowa court records, leave somewhat murky the direction of the constitutional attack on the 1960 conviction. Three possible theories may be extricated from the files and records.

### A.

■ Allegedly, the Iowa conviction is defective because the court records, which are stipulated into evidence, do not indicate that the petitioner desired counsel, or that the court informed the petitioner that counsel would be provided at the expense of the state, or that counsel was waived. The court's judgment entry declares that the petitioner "appears before this court in person and with his attorney, Frank W. Shaw." The guilty plea was entered and accepted without a hearing, leaving the plea to rest upon a standard form document titled "Plea of Guilty." The United States Court of Appeals for the Eighth Circuit in Losieau v. Sigler, 406 F.2d 795 (1969) noted that the question of whether the petitioner was represented by counsel is one of fact, and "the burden of proof is on an accused to establish that he was denied the right to counsel." Here the judgment entry expressly recites that the petitioner was represented by counsel at the time of his plea. Moreover, not a shred of evidence has been offered to rebut the court record. I conclude, therefore, that the petitioner has failed to meet his burden of proof that he was not represented by counsel. Consequently, his attack, which is predicated upon a mere assertion that counsel was not present, must fall.

### B.

■ It can be inferred from the pleadings that the petitioner is claiming that his guilty plea was motivated in part or wholly by an involuntary confession. Assuming that to be the case, without so finding, McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), instructs that a guilty plea entered by a criminal defendant represented by counsel cannot be successfully assailed in a subsequent collateral proceeding on the ground the plea was induced by an involuntary confession, except where counsel was ineffective. The petitioner makes no contention that his counsel was ineffective. Consequently, the guilty plea of the petitioner is free of the claim of involuntariness.

Finally, the petitioner's attack on his 1960 conviction rests upon the apparent failure by the state trial court to conduct a hearing prior to accepting the guilty plea to ascertain whether the plea was made intelligently and voluntarily. In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), Mr. Justice Douglas, speaking for the majority, held that it was "error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary."

The threshold issue is whether Boykin is applied retroactively. In Meller v. State of Missouri, 431 F.2d 120 (C.A. 8th Cir. 1970) the court explicitly limited the Supreme Court's decision in Boykin to prospective application. The relevant consideration in pre-Boykin state criminal convictions was recently enunciated in State of Missouri v. Turley, 443 F.2d 1313 (C.A.8th Cir. 1971):

" * * * (T)he adequacy of the record made in connection with accepting guilty pleas seems to us to be governed, at least in part, by the age, maturity, experience and finesse of the particular defendant."

Here the petitioner was represented by counsel, was 26 years of age, and had a prior felony conviction. These considerations lead this court to the same conclusion reached in Turley: "It defies logic to believe he did not understand the proceedings at the time he entered his guilty plea."

An appropriate order will be entered this day dismissing the petition.